## DAWSON v. CLELLAND.

Court of Appeals of Kentucky.
Nov. 7, 1952.

Raymond C. Stephenson and Homer Parrent, Jr., Louisville, for appellant.

Thomas H. Young and J. Allen Sherman, Louisville, for appellee.

SIMS, Justice.

Appellant, Oscar F. Dawson, recovered a default judgment against appellee, Frank Clelland, wherein the jury assessed his damages in a personal injury action at $10,-000. When an execution was issued on that judgment against Clelland, he filed the instant action against Dawson under our Civil Code of Practice, Sec. 518(4) in which he charged that the original judgment was obtained by fraud and asked that it be vacated "and the execution levied pursuant to said attachment be set aside." Dawson's answer was a general denial. Proof was heard by Hon. William H. Field, Judge of the Common Pleas Court before whom the damage suit was tried, who delivered from the bench an exhaustive opinion, which was reported by the official stenographer and appears in the record, wherein he granted the relief asked.

Two grounds are urged for reversal: (1) The petition for a new trial alleged conclusions and not facts which constituted fraud upon the part of Dawson in obtaining the original default judgment, therefore the general demurrer to the petition should have been sustained; (2) the evidence introduced in the present action failed to show any fraud upon the part of Dawson in the original suit.

It may be helpful to give a brief picture of the original action before discussing the two grounds advanced for reversal of the judgment in the instant case. Dawson was an employee of Churchill Downs, a corporation which owns and operates a race course by that name in Louisville, as well as training stables and a track at nearby Douglas Park. On November 26, 1948, Dawson was seriously injured while attempting to dislodge a horse van which had become "stuck in soft ground" at Douglas Park where Clelland had a stable of horses. This van was loaded with hay. Dawson removed from the van three wagon loads of the hay and hauled it to Clelland's barn with a team and wagon. Then Dawson returned to the van with the team and wagon which were attached to the van in an attempt to dislodge it while the engine was running. The wagon was overturned

in this operation and Dawson was seriously injured. He testified that Celland was on the van and sent for him to come and remove the hay. Clelland denied he was on the van or that he sent for Dawson and the team. While the testimony is conflicting on this point, the evidence greatly preponderates in favor of Clelland. Churchill Downs and Dawson were operating under the Workmen's Compensation Act, KRS 342.001 et seq., and Dawson applied for and received compensation of $3253.05 and an additional $576.14 to cover medical expenses. In applying for this compensation, Dawson did not mention to his employer or its insurance carrier any claim or right of action he had against Clelland.

On November 10, 1949, Dawson instituted an action against Clelland and others whom he alleged negligently operated the van and caused his injury. Clelland was served with summons on December 1, 1949, failed to answer and on March 10, 1950, a jury assessed Dawson's damages at $10,000 for which judgment was entered against Clelland. The suit was dismissed as to the other defendants. Soon after execution was issued on that judgment Clelland on September 7, 1950, filed this action under Sec. 518(4), Civil Code of Practice, averring that Dawson and he had been good friends for years; that Dawson knew Clelland had no connection with the operation of the "stuck van" or its load of hay or the attempt to release the van from the soft ground; that Dawson inquired of him who owned and operated the van and he gave Dawson that information; that Dawson requested him to testify "for him when and if it was necessary;" that when he was served with the summons in the instant action he thought he was being called upon to be a witness for Dawson; that both Dawson and Churchill Downs told him that Dawson's injuries were being taken care of by compensation insurance and the settlement was being made with Dawson, and Clelland was falsely led to believe "that Dawson was duly compensated thereby;" that Dawson visited Clelland, both in the latter's home and place of business, and in referring to the accident stated: "Well, its just one of those things that couldn't be helped"; all of which fraudulent acts of Dawson lulled Clelland into a false sense of security. The petition to vacate the $10,000 judgment for damages further averred that Clelland did not own any interest in the van, was not interested in its operation or in dislodging it from the soft ground and it was not hauling any hay for him, all of which Dawson knew, yet Dawson falsely and fraudulently averred in the petition that under the supervision of Clelland he attached the wagon and teams to the van belonging to Clelland and suffered his injuries by so doing.

In order to set aside a judgment under Sec. 518(4) a general averment that the judgment was obtained by fraud is not sufficient, but the plaintiff must both allege and prove the specific acts upon which he relies, as well as the defense he could or would have interposed to defeat the rendition of the judgment had he not been prevented from so doing by the alleged fraud. Hargis Commercial Bank & Trust Co.'s Agent v. Eversole, 255 Ky. 377, 74 S.W.2d 193; Board of Education of Pulaski Co. v. Nelson, 261 Ky. 466, 88 S.W. 2d 17. The contents of Clelland's petition to vacate the judgment are set out in the preceding paragraph and plainly show it averred specific acts of fraud upon the part of Dawson, and Clelland's defense to them. Therefore, the petition states a cause of action and the court properly overruled the general demurrer to it.

We come now to the question of whether Clelland's proof supports the averments of his petition. As stated in the opinion of the trial judge, the proof overwhelmingly shows Clelland was not in the van at the time of the accident, gave no directions as to how to release it from the soft ground; that he did not own the van; had no interest in its operation and it was not hauling the hay for him, and he allowed the hay to be put in his barn as a mere convenience in unloading the van to dislodge it. The proof is conclusive that Clelland would have answered the original petition, denied all liability and would have proved he was in no way liable for Dawson's injuries, had he not relied upon the

latter's statement that he wanted Clelland as a witness. True, Clelland was negligent in not reading carefully the summons instead of assuming it was a subpoena, but this fact should not penalize him to the extent of $10,000 when he relied upon the statement of his friend Dawson that he would use Clelland as a witness.

▆ We have been liberal on the question of granting new trials under Sec. 518(4) when the records shows one has been misled by the statements or conduct of the opposing party and for that reason has failed to make an available defense. In this character of case the "fraud" need not be vicious or deliberate, but the term is sufficiently broad to embrace leading the opponent astray, throwing him off guard or lulling him to sleep. Johnson v. Gernert Bros. Lumber Co., 255 Ky. 734, 75 S.W.2d 357. The trial court has a broad discretion in granting new trials, with which we will not interfere unless there has been an abuse of that discretion; and we are less inclined to interfere when the trial judge grants a new trial than when he refuses it. Daniel v. Morgan, Ky., 244 S.W.2d 752. The theory behind this rule is a new trial for one is a new trial for both. If Dawson has a meritorious case, he will have a full opportunity to recover damages from Clelland on a trial at which both of them and their witnesses will have a chance to be heard. It cannot be doubted that the administration of justice will be promoted by setting aside this default judgment and having the controversy tried on its merits.

Dawson cites many cases to support his position that the trial judge erred in vacating this large default judgment. However, an examination of them shows they are not controlling in the instant case. A good many of them relate to instances where the complaining party by motion sought to have the court vacate the judgment after the term ended and at a time when the trial judge had lost control of his orders. In them we held that as the judgments were not void but merely erroneous, the trial court was without jurisdiction to set them aside after the term. Other of the cases were where the new trial was sought during the term on the ground of casualty or mistake and have no application here. Still other of the cases cited by Dawson say the fraud alleged was not sufficient to prevent the complaining party from making such defense as he might have had. In the instant case the fraud did prevent Clelland from making his defense.

Taking a broad view of the case at hand, we cannot say the trial judge abused his discretion in granting a new trial. His action is inclined to promote justice by bringing about a fair trial to each party, and his judgment is affirmed.