JANNENGA *v.* JOHNSON, ET AL.

[No. 266, September Term, 1965.]

2

*Decided June 3, 1966.*

The cause was argued before HORNEY, MARBURY, OPPEN-HEIMER, BARNES and MCWILLIAMS, JJ.

*Sherman W. West,* with whom were *Marion E. West* and *West & Venables* on the brief, for appellant.

*Joseph S. Cullins, Jr.,* with whom was *Morris Topf* on the brief, for Anna Jawitz, one of the appellees; no brief filed for other appellee.

BARNES, J., delivered the majority opinion of the Court, in which HORNEY, J., concurs. Concurring opinion at p. 7, *infra.*

This case raises the issue of the effect of a failure to comply with Maryland Rule 105 in proceedings by order of publication to foreclose an owner's equity of redemption pursuant to Code (1957) Art. 81, §107 in property conveyed at a tax sale.

In 1960 Mrs. Anna Jawitz (appellee),[1] surviving tenant by the entirety, was the sole owner of a parcel of improved land located in the city of Hyattsville, Maryland. The city of Hyattsville collected its own taxes each year until it was notified that beyond a certain date—January 13, 1961 in this instance—the taxes were to be paid at the office of the county treasurer. Prior to January 13, 1961 the city of Hyattsville furnished the county treasurer with a list of persons who had not paid their 1960 taxes. This list included the name of the appellee, Mrs. Jawitz. Mrs. Jawitz (or her lessee for her) had paid her municipal taxes at the city's office on January 7, 1961, but the town clerk and treasurer had failed to notify the county treasurer of their payment. The county treasurer, not knowing that the taxes had been paid, sold the property to the appellant Roy Jannenga (Jannenga), at a tax sale conducted pursuant to Code (1957) Art. 81, §§70-123, for $87.44. The property was assessed for $12,440.00.

On March 5, 1963 Jennenga filed a petition to foreclose the owners' rights of redemption in several parcels of land which he had purchased at tax sales. Included in this petition was Mrs. Jawitz's property. Mrs. Jawitz, a nonresident of Maryland, was proceeded against by order of publication pursuant to Code (1957) Art. 81, §107. The record does not show, however, that Jannenga complied with any of the provisions of Maryland Rule 105 which must be followed where an action is maintained against a nonresident by order of publication without personal service of process within this State, or where a resident is proceeded against by order of publication as if he were a nonresident. Maryland Rule 105 a.

There is no evidence that a copy of the order of publication was personally served on Mrs. Jawitz (Maryland Rule 105 d 2) ; or that a copy of the published notice was sent to Mrs. Jawitz by registered mail. (Maryland Rule 105 e). No affidavit

---

1. Although Mrs. Jawitz is the real appellee, the case was docketed in the lower court and in this Court as "Roy Jannenga v. Amelia Anne Johnson, et al", because Amelia Anne Johnson was the first defendant named among a number of them (including Mrs. Jawitz) in the suit brought to foreclose the rights of redemption of the former owners and taxpayers.

4

was filed showing that such notice was mailed or that Mrs. Jawitz had been personally notified by other means of the proceedings to foreclose her equity of redemption in the subject property. Maryland Rule 105 f. Mrs. Jawitz's address clearly appeared on the tax records as "c/o Albert Smith Mortgage Co., 300 Woodward Building, Washington 5, D. C."

On October 9, 1964, the Circuit Court for Prince George's County entered a decree foreclosing Mrs. Jawitz's equity of redemption in the subject property. Mrs. Jawitz did not learn of the decree until February, 1965. She then forthwith filed a suit to vacate the decree and set aside the deed which the county treasurer had delivered to Jannenga. On March 31, 1965 the suit between the owner and the tax sale purchaser came up for a hearing on a motion for summary judgment filed by Jannenga. On April 8, 1965 the trial court vacated the decree and set aside Jannenga's deed. This appeal followed.

In *Hauver v. Dorsey*, 228 Md. 499, 180 A. 2d 475 (1962) we said that Maryland Rule 105 applied to suits to foreclose rights of redemption, so that in situations where a resident, or, as in this case, a nonresident is proceeded against by order of publication pursuant to section 107 of Article 81, the notice requirements of Maryland Rule 105 must be complied with.

Code (1957) Art. 81, §113 provides that a decree setting aside an owner's equity of redemption in property conveyed at a tax sale shall be conclusive and may not be reopened "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose." We held in *Hauver v. Dorsey, supra,* that the mere failure to file an affidavit or other evidence of compliance with the requirements of Maryland Rule 105 is not a jurisdictional defect such as would void a decree setting aside an owner's rights of redemption.

Mrs. Jawitz makes no claim in this case of actual fraud in the conduct of the proceedings to set aside her equity of redemption.[2] We hold, however, that before one may proceed by order

---

2. An example of actual fraud in the conduct of the proceedings in this case could have been that of filing a false affidavit of compliance with Maryland Rule 105 where no compliance had in fact been effectuated.

of publication pursuant to section 107 of Article 81, he is required by that section to comply with the provisions of Maryland Rule 105 and to make a good faith effort to furnish the defendant with such personal notice as would reasonably inform him of the proceedings against his property. A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty. The Court in *Hauver* did not pass upon the issue of constructive fraud present in the case at bar.

The law declares this failure to comply with the requirements of Maryland Rule 105 to be fraudulent because of its tendency to deceive those who might otherwise not be notified of proceedings to foreclose their property rights except by the essentially *pro forma* means of publication. See *Epstein v. United States,* 174 F. 2d 754 (6th Cir. 1949) ; *Bank v. Board of Education of City of New York,* 305 N. Y. 119, 111 N. E. 2d 238 (1953) ; *Priddy v. Kernersville Lumber Co., Inc.,* 258 N. C. 653, 129 S. E. 2d 256 (1963) ; *Archer v. Griffith,* 390 S. W. 2d 735 (Tex. Sup. Ct. 1964) ; *Stroh v. Dumas,* 117 Vt. 13, 84 A. 2d 408 (1951) ; *In re Borton's Estate,* 393 P. 2d 808 (Wyo. 1964) ; *Devers v. Greenwood,* 293 P. 2d 834 (Cal. App. 1956).

In *Whitehurst v. Barnett,* 161 Md. 444, 449, 157 Atl. 737 (1932), our predecessors said:

> "Constructive fraud, however, sometimes called 'legal fraud', is, nevertheless, fraud, although it rests more upon presumption and less upon furtive intent, than moral fraud."

This statement was recently quoted with approval by this Court in *Tyler v. Secretary of State,* 229 Md. 397, 405, 184 A. 2d 101, 105 (1962). Fraud, as would justify reopening a final decree pursuant to section 113 of Article 81, need not be vicious and deliberate. Constructive fraud satisfies the requirement of the statute. See *Kersh Lake Drainage Dist. v. Johnson,* 203 Ark. 315, 157 S. W. 2d 39 (1941) ; *Dawson v. Clelland,* 252 S. W. 2d 694 (Ky. 1952) ; *Triplett v. Stanley,* 279 Ky. 148, 130 S.

W. 2d 45 (1939) ; *State v. District Court of Second Judicial Dist.*, 102 Mont. 227, 57 P. 2d 809 (1936) ; *Antonsen v. Pacific Container Co.*, 120 P. 2d 148 (Cal. App. 1941) ; *St. Mary v. St. Mary*, 175 So. 2d 893 (La. App. 1965).

The case at bar is to be distinguished from the decision of the Court in *Sanchez v. James*, 209 Md. 266, 120 A. 2d 836 (1956). In *Sanchez,* the property owners of land in Prince George's County were residents of Maryland at the time of the filing of the suit to foreclose rights of redemption but had formerly resided in the District of Columbia. The District of Columbia address appeared on the land records of Prince George's County and this was the address given by counsel for the tax sale purchaser to the sheriff for service. The correct address of the owners in Prince George's County appeared on the assessment records in the county treasurer's office. Subpoenas directed to the owners were twice issued, the sheriff returned them both *non est,* and thereafter the tax sale purchaser proceeded against the owners as nonresidents as then provided in the Maryland Tax Sale Act, Article 81, Section 104 of the 1951 Maryland Code. At that time, the Maryland law *only* required notice by publication for nonresidents or those treated as nonresidents under Article 16, Section 160 of the 1951 Maryland Code. All of the *them* statutory requirements were complied with by the tax sale purchaser. It was stipulated in *Sanchez* that there was no actual fraud involved and that it was by the oversight of the tax sale purchaser's attorney that the later and current address was overlooked in the tax records. The majority of the Court was of the opinion that under those circumstances neither fraud nor lack of jurisdiction was established and the decree in the tax sale foreclosure suit was valid. In a dissenting opinion in *Sanchez,* Judge Hammond was of the opinion that there was constructive fraud and that the tax sale foreclosure decree should have been set aside.

Since *Sanchez,* Maryland Rule 105 has been promulgated by this Court which, as we have indicated, requires the giving of the notice set forth in the Rule. After Maryland Rule 105 was promulgated on January 1, 1957 [3] (subsequent to the decision

---

3. The history of the prior law and the promulgation of Mary-

in *Sanchez* on March 6, 1956) it then became the *legal duty* of plaintiffs to give the required notice. In *Sanchez,* the tax sale purchaser complied with all of the requirements of law then applicable, and made a good faith effort to give the sheriff the correct address of the property owners. In the case at bar, the tax sale purchaser has shown no effort at all to give the required notice to the property owner and has failed to file the affidavit required by Maryland Rule 105.

> *Judgment affirmed, the appellant to*
> *pay the costs.*

Horney, J., filed the following opinion, concurring in the result.

The majority, in affirming the order of the lower court vacating its decree and setting aside the tax sale deed, based their conclusion on the fact that the failure of the tax sale purchaser to comply with the provisions of Maryland Rule 105 g 1—requiring the purchaser to make a reasonable effort in good faith to locate the property owner and warn her of the pendency of the foreclosure proceeding — amounted to constructive fraud. Aside from the fact that it seems to me that the majority, in attempting to distinguish the instant case from *Sanchez v. James,* 209 Md. 266, 120 A. 2d 836 (1956), have in effect adopted the dissenting opinion in *Sanchez* and overruled the majority opinion, the affirmance, in my opinion, should have been based squarely on the ground, as did the lower court, that it had no jurisdiction to decree a foreclosure of the right of redemption to property on which the taxes had been paid prior to the tax sale.

Although § 101 of Article 81 of the Code declares that the court has equity jurisdiction to give full and complete relief under the tax sales statute in accordance with general equity jurisdiction and practice and the provisions of all laws and rules of court except as otherwise provided in the statute and § 113

---

land Rule 105 and its prior history are fully given in the opinion of the Court in Hauver v. Dorsey, 228 Md. 499, 501-502, 180 A. 2d 475, 476 (1962), supra.

8

provides that the final decree foreclosing the right of redemption is conclusive and may not be opened except on the ground of lack of jurisdiction or fraud in the conduct of the foreclosure proceeding, it is clear that, under § 72, the collector of taxes (the county treasurer in this instance) had authority to sell only [1] property "upon which taxes are in arrears." As stated in § 70, only unpaid taxes constitute a lien on real property. Furthermore, while the present tax sales statute was designed to improve the method of foreclosing redemption rights so as to expedite the procurement of marketable tax titles, as was pointed out in *Hauver v. Dorsey*, 228 Md. 499, 180 A. 2d 475 (1962) and earlier in *Thomas v. Kolker*, 195 Md. 470, 73 A. 2d 886 (1950), there is nothing in the statute indicating that the legislature had any intention of authorizing a sale of property for taxes that had been paid before the sale was made.

Our predecessors, having concluded in *Mullen v. Brydon*, 117 Md. 554, 83 Atl. 1025 (1912), that a tax collector had no power to sell land for taxes unless the taxes were due and in arrears at the time of sale, went on to hold that a sale of property for taxes which had been paid prior to the sale was null and void and conferred no title on the purchaser. The situation here is identical with the situation there. And since there is not the slightest doubt that the sale made by the county treasurer was null and void under the circumstances of this case, the lower court never acquired jurisdiction in the first place and, because it did not, it had no power to decree foreclosure of a right of redemption that did not in fact exist. Any other holding would be in conflict with § 23 of the Declaration of Rights (Due Process) declaring that no man ought to be disseized of his freehold or deprived of his property but by the law of the land. Also see *Thomas v. Hardisty*, 217 Md. 523, 143 A. 2d 618 (1958), holding that neither § 113 nor § 112 of Article 81 undertake to give validity to a void sale and that any attempt to do so would involve a denial of due process.

---

1. The statute uses the word *all* instead of *only* but contextually *all* as used in § 72 of Article 81 of the Code means "only" or "nothing but" according to the second edition of Webster's New International Dictionary.