# DOLORES WEAVER GARRIS et al. *v.*
# J. VICTOR DICKEY et al.

[No. 854, September Term, 1973.]

*Decided September 18, 1974.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*Henry F. Leonnig* for appellants.

*George A. Wilkinson, Jr.,* with whom were *Wilkinson &*

*Walker* on the brief, for appellee J. Victor Dickey. Submitted on brief by *Frank M. Kratovil* for appellee Arthur Moore.

POWERS, J., delivered the opinion of the Court.

On 5 March 1962 the County Treasurer of Prince George's County conducted the regular annual tax sale of real estate on which taxes for the year 1961 were delinquent. One of the parcels sold was described as Lots 44 and 45, Block D, and improvements, in the subdivision of Deanwood Park, assessed to Malessia [1] L. Weaver. A Certificate of Tax Sale was issued by the Treasurer to J. Victor Dickey, purchaser.

On 25 February 1964 Dickey filed in the Circuit Court for Prince George's County a Bill of Complaint to Foreclose Right of Redemption. The bill named numerous defendants, and described several separate parcels of real estate, all bought by Dickey at the same tax sale. Among the defendants listed in the caption was "Melessia L. Weaver, deceased, 206 G Street, N.W. Washington 1, D.C." The pertinent paragraph in the bill alleged:

> "That Melessia L. Weaver is the record owner of Lots 44 and 45, Block D & improvements, Deanwood Park, Seat Pleasant 18th Election District. That the amount necessary for the redemption of said property is $127.36 plus taxes, interest and costs since March 5, 1962."

In addition to the named defendants, the bill was brought against all of their unknown heirs, devisees, and successors, and against all persons having, or claiming to have, any interest in any of the real estate therein described.

Summonses were issued in the name and for the address of Melessia L. Weaver as shown in the bill, and were returned "non est". An order of publication was entered and published. An affidavit of title search was filed. An affidavit was made and filed by Dickey's attorney stating that he had "caused to be mailed to all of the nonresident defendants

---

1. Sometimes spelled Melessia, or Melissa.

copies of the Bill of Complaint herein filed, by Registered Mail".

A decree pro confesso was passed by the court on 29 April 1964 against several of the defendants named in the bill, including Melissa L. Weaver. On 2 June 1964 a final decree was entered in the case, the relevant parts of which decreed that all rights of redemption of Melessia L. Weaver in Lots 44 and 45, Block D & Improvements, Deanwood Park, Seat Pleasant 18th Election District, be and the same hereby are forever barred and foreclosed; and that an absolute and indefeasible estate in fee simple in and to the said property be and it hereby is vested in the plaintiff, J. Victor Dickey. The Treasurer, as directed by the decree, executed and delivered an appropriate deed.

A little over four months later, on 6 October 1964, Dolores Weaver Garris filed in the case a Motion to Vacate and Set Aside Final Decree. A copy was mailed to Dickey's attorney, who on 16 November 1964 filed an answer to the motion. A copy of the answer was mailed to the attorney who filed the motion for Mrs. Garris.

From 16 November 1964 until 9 May 1972 the case was dormant. During this period of $7^1/_2$ years there were no proceedings of any kind. On the latter date new counsel filed a motion for leave to file an Amended Motion to Vacate and Set Aside Final Decree of Foreclosure of Equity of Redemption, joining as co-movants Thelma Weaver Cummings and Clarence Weaver, asserting that the three were the children and sole heirs at law of Malessia L. Weaver, deceased. Leave was granted and the amended motion was entered as filed on 31 May 1972. Dickey, through new counsel, filed an answer.

The Weaver heirs later caused to be added as parties Arthur A. Moore and his wife, who had purchased the property from Dickey in 1970, after having occupied it as tenants since October 1964. Mr. Moore filed an answer, stating that he was the surviving owner, and that his title depended upon a determination of the title that Dickey conveyed to him.

The first motion to vacate, filed by Mrs. Garris only,

alleged that she was a daughter of Malessia Langford Weaver, that the plaintiff knew the whereabouts of the heirs but did not serve any of them, and that the affidavit of search was fraudulent, in that records of the court indicated who the heirs were and it was known who had been paying taxes on this and other property.

Dickey's answer denied that he knew the whereabouts of the heirs and denied that the records of the court indicated the heirs. It further asserted that he gave the proper notice, that he had written a letter in September 1962 to the record owner advising of his purchase of the property at tax sale, that there had been no administration on the decedent's estate, although she died in 1954, that he had expended $6,000.00 in improvements on the property, that the movant was guilty of laches, and that the foreclosure decree was conclusive.

The amended motion alleged more facts in more detail, in support of the same contention, that the decree was void. The answer put in issue the significant allegations.

An evidentiary hearing on the amended motion to vacate was held before Judge James F. Couch, Jr. on 31 July 1973. Mrs. Garris, Mr. Dickey, and Mr. Moore testified. Several exhibits were received.

Evidence presented to the court showed that Mrs. Weaver, a widow, acquired the property in 1951. She never occupied it, but lived in another house in the same subdivision, a few blocks away. She died in 1954 leaving two daughters. She also had a stepson whom the daughters looked upon as an heir. She left no will, and there was no administration on her estate until June 1966. At the time of the hearing that administration had not been closed. The address shown for Mrs. Weaver in the land records and tax records was 206 G Street, N.W., Washington 1, D.C., where her sister had lived at one time. That address was never changed.

The property had been sold in 1959 in default of 1958 taxes. Dickey, who was also the purchaser at that sale, filed a foreclosure suit in February 1961. After a decree pro confesso but before final decree in that case the property was redeemed. Mrs. Garris testified that her sister, Mrs.

Cummings, arranged through an attorney for the redemption. The record in that case shows only that this property and the properties of two other owners were redeemed by one petition filed in the names of the record owners of the respective properties.

Sometime between March and September 1962 Dickey received a telephone inquiry about the property from a woman whose name he understood to be Dolores Garrett. He told her that he had bid in the property at tax sale, and wanted to know if Mrs. Weaver was going to redeem it. The caller said, "Of course it will be redeemed again, like I redeemed it the last time". Dickey asked what her connection was, and if she was related. The caller replied that she didn't see where that would be any of his business. He testified that he was unable to obtain any other information from her.

On 27 September 1962 Dickey mailed a letter to Mrs. Weaver at the address shown on the records, "the only address I knew", and enclosed in the same envelope a carbon copy for "Mrs. Dolores Garrett". In the letter Dickey said that he had bid the property in at the tax sale, that Mrs. Weaver might need some special help in connection with it, and if she would get in touch with him he might be able to help her get the matter straightened out.

Mrs. Garris telephoned Dickey in response to the September 1962 letter. She told him that she was a daughter of Mrs. Weaver, and that her mother was dead. She said that she was redeeming the property. She did not contact Dickey again, nor did she redeem the property. Almost a year and a half later the foreclosure suit was filed. In June 1964 Mrs. Garris went to the court house to pay the taxes, and was told that she was too late. She saw an attorney, who in October 1964 filed the first motion to vacate the decree.

The chancellor filed an Opinion of Court and a decree on 4 October 1973. He ruled that the movants were guilty of laches, which he held barred their right to relief. He found no need to consider the merits of the fraud issue raised by movants. The decree denied the motion to vacate. The Weaver heirs filed this appeal from that decree.

Appellants here contend that the lower court was without jurisdiction to grant the decree of foreclosure because of Dickey's failure to comply with certain requirements and because of actions by him which amount to constructive fraud, and contend further that the court erred in holding that their right to relief was barred by laches.

We agree with the chancellor that the long and unexcused delay in prosecuting their claim, and the prejudice resulting from it, amounted to laches, and alone was sufficient to bar the appellants from asserting any claim to the property, whether meritorious or not. We choose, however, to consider first the merits of their motion to vacate, for if the motion had no merit, the presence or absence of laches is immaterial.

Let us examine the breadth of our inquiry. *Hardisty v. Kay,* 268 Md. 202, 299 A. 2d 711 (1973) involved the reverse of the usual tax sale dispute. There the buyer, after having obtained a final decree foreclosing the right of redemption, balked at accepting a deed and paying the balance of his bid for the property. The former owners filed a petition to compel payment. The purchaser contended that the decree was binding only upon the defendants. He filed a petition in the lower court to amend the decree by striking the portion affecting the property involved. The trial court denied the petition, holding that it was barred by Code, Art. 81, § 113, from even entertaining it. The trial court then entered judgment against the purchaser for the balance due. The Court of Appeals affirmed. It quoted from the statute:

" § 113. Decree conclusive.

No application shall thereafter be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose . . . ."

The Court commented on the meaning of the law, saying, at 208:

"The purpose for this provision and the others of

this Article is 'to encourage the foreclosure of rights of redemption by suits in equity courts and for the decreeing of marketable titles to property sold by the collector.' Art. 81, § 97. 'In other words, the legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure.' *Thomas v. Kolker*, 195 Md. 470, 475, 73 A. 2d 886 (1950). *See also Kaylor v. Wilson*, 260 Md. 707, 712, 273 A. 2d 185 (1971). Here, there is no allegation or suggestion of lack of jurisdiction or fraud.

We think the legislature has been explicit in its language and clearly expressed its intention that a final decree is conclusive and *no* application shall thereafter be entertained unless it falls within the exempted categories."

Appellants contend that in securing the decree of foreclosure Dickey was guilty of constructive fraud. They also argue that the lower court lacked jurisdiction to pass the decree of foreclosure, for the reasons that Dickey failed to comply with Maryland Rule 180, that the order of publication was not published once a week in each of four successive weeks, that the requirements for notice where service is by order of publication were not met, and that the affidavit of mailing did not comply with the applicable rule.

The constructive fraud alleged is that Dickey, knowing that the record owner was deceased, and knowing that the property was redeemed in the earlier foreclosure case by Mrs. Cummings, as an heir, should have named or served Mrs. Cummings in the present case.

What amounts to constructive fraud was explained in *Jannenga v. Johnson*, 243 Md. 1, 220 A. 2d 89 (1966) in which the Court of Appeals affirmed the lower court's order vacating a decree of foreclosure in a tax sale case. The Court pointed out that there was no evidence that a copy of the

order of publication was personally served on the owner, Maryland Rule 105 d 2, or that a copy was sent to her by registered mail, Rule 105 e, or that an affidavit was filed showing that notice was mailed or that the owner had been notified personally or by other means of the proceedings to foreclose her equity of redemption, although the tax records showed an address for the owner in care of a mortgage company in Washington, D.C. The Court pointed out that there was no claim of actual fraud, but said, at 4-5:

> "We hold, however, that before one may proceed by order of publication pursuant to section 107 of Article 81, he is required by that section to comply with the provisions of Maryland Rule 105 and to make a good faith effort to furnish the defendant with such personal notice as would reasonably inform him of the proceedings against his property. A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty. The Court in *Hauver* did not pass upon the issue of constructive fraud present in the case at bar.
>
> The law declares this failure to comply with the requirements of Maryland Rule 105 to be fraudulent because of its tendency to deceive those who might otherwise not be notified of proceedings to foreclose their property rights except by the essentially *pro forma* means of publication."

The Court of Appeals said further, at 5:

> "Fraud, as would justify reopening a final decree pursuant to section 113 of Article 81, need not be vicious and deliberate. Constructive fraud satisfies the requirement of the statute."

As the Court observed, constructive fraud could consist of no more than failure to perform a legal duty.

In the earlier case of *Hauver v. Dorsey*, 228 Md. 499, 180 A. 2d 475 (1962), which, as the Court said in *Jannenga*, did not pass upon the issue of constructive fraud, the Court of Appeals said that the issuance of an order of publication under Code, Article 81, § 107 is a jurisdictional requirement, but that Maryland Rule 105 does not add additional requirements of a jurisdictional nature. It said that Rule 105 does not require personal service, but, in effect, only a showing of good faith. The Court said in *Hauver*, at 505:

> "We have frequently pointed out that the tax sales law was designed to improve the marketability of tax titles. See *Thomas v. Kolker*, 195 Md. 470, 475. Petitioner was less than diligent in failing to ascertain that taxes were in default, that the sale had been made, and a proceeding to foreclose instituted. Cf. *James v. Zantzinger, supra* (p. 115). We see no reason to hold that a procedural requirement, designed to prevent imposition upon the court and require a reasonable effort in good faith to locate and warn the owner, creates a jurisdictional defect in the fundamental sense of preventing the court from dealing with the subject matter and the parties before it."

If Dickey failed to perform a legal duty, *i.e.*, to make a good faith effort to furnish the defendant with such personal notice as would reasonably inform her of the proceeding against her property, he was guilty of constructive fraud as defined in *Jannenga*. It appears to us, then, that if, as alleged, Dickey failed to comply with the rules, his failure either related to a non-jurisdictional procedural requirement as in *Hauver*, or to the performance of a legal duty as in *Jannenga*.

If, on the other hand, the records Dickey was required to search disclosed, as alleged, the identity and whereabouts of an owner of the property, and Dickey did not name or notify the owner, such an omission would involve a malicious

motive to deceive and would be actual, not constructive, fraud.

Dickey's legal duty is to be found in Art. 81, §§ 102, 103, 106, and 107, with Maryland Rule 105 being read as a part of § 107. Section 102 prescribes what shall be set forth in the bill of complaint. Section 103 says who shall be defendants. Relevant here is that the defendant shall be the "owner of the property as disclosed by a search of the land records of the county, of the records of the register of wills of the county, and of the records of any court of law or equity of the county". Section 103 goes on to say:

"It shall not be necessary to name as defendant any other person having or claiming to have any right, title, interest, claim, lien or equity of redemption in and to the property sold by the collector. Any or all of such persons may be included as defendants by the designation 'all persons having or claiming to have any interest in property ................ (giving a description of the property in substantially the same form as the description which appears on the Collector's tax bill).' Any or all such persons may be designated throughout the proceeding by the above designation and the cause may proceed against them by publication under order of court as hereinafter provided."

Section 106 provides for the issuance and service of subpoenas, and says:

"Provided that in all cases where two successive subpoenas against a named defendant have been returned non est * * *, such defendant shall be deemed to be served by the publication issuing under the provisions of the succeeding sections as if he were a nonresident."

After providing for the issuance of an order of publication "in the manner now, or which may be hereafter prescribed by law", thus adopting the provisions of Maryland Rule 105,

*see Hauver v. Dorsey, supra,* and *Jannenga v. Johnson, supra,* § 107 provides:

> "When such order of publication shall have been issued and published as aforesaid, all persons having any right, title, interest, claim, lien or equity of redemption in the property shall be bound by the decree of the court which may be passed in the case as if they were personally served with process."

Reading §§ 102, 103, 106 and 107, with Maryland Rule 105, we find from the record that Dickey's bill of complaint was in proper form, that he properly named the owner of the property as disclosed by a search of the records, that an order of publication was issued and published, as required by Rule 105 d 1, and that there was substantial compliance with §§ e and f, or with § g 1 of Rule 105.

Appellants' argument that the order was not published once a week in each of four successive weeks seems to be based on the view that publication in the same week that the order was passed does not count. There is no merit whatever in this view. What the rule requires is that the order be published four different times, each in a separate week, and that the weeks be successive. The certificate of the publisher shows full compliance.

Section e of Rule 105 provides that where personal service is not made, and the residence is known, the plaintiff shall mail a copy of the published notice to the defendant by registered mail, but if delivery cannot be effected, the plaintiff may give notice of the fact that an action is pending by telephone, telegraph, or any other means available. Section f requires the filing of an affidavit of mailing, and of the receipt for such registered mail. Appellants say that Dickey failed to comply, because the receipt was never filed, but they go on to concede that the mail was never delivered. The rule certainly does not require filing an addressee's receipt for mail never received.

The third attack on service of process, the alleged failure of which is contended to be jurisdictional, is that the

affidavit of mailing says that a copy of the bill of complaint was mailed, but under the rule it should have been a copy of the order of publication.

There is no substance to this contention. Whatever was mailed, it was never received. No person could be misled or even ill informed by the contents of an unopened envelope. We think the mailing recited in the affidavit was substantial compliance with this non-jurisdictional requirement, and, in addition was sufficient to satisfy the court that reasonable efforts had been made to locate the named and unnamed defendants and to warn them of the pendency of the action.

Appellants further contend that Dickey failed to comply with Maryland Rule 180. That rule, for general application in equity cases involving property, provides for notice when it is not known whether a proper party is living or dead, or if known to be dead, the identity and residence of a successor are not known. Rule 180 then provides for service of process pursuant to Rule 105. There is nothing in Rule 180 which required Dickey to do any more than was required by Rule 105.

In the formal steps of the proceeding, Dickey was bound to follow the requirements of the statute and the rules. There was a total lack of any evidence whatever to support appellants' allegation that the records of the court indicated who the heirs were. Dickey had no choice but to name the owner and give the address disclosed by a search of the records. The proceeding would have been defective had he done otherwise. He was entitled to rely on the information disclosed by a search of the records. In the case of *Matthews v. Fuller*, 209 Md. 42, 120 A. 2d 356 (1956) in which a will was discovered some years after the closing of administration of the estate of a decedent as intestate, the Court of Appeals referred to the tax sale statutes by way of analogy, and said of them, at 52:

> "These provisions clearly put great emphasis upon what the public records disclose, and permit the holder of a tax sale certificate to rely upon facts which may be ascertained from those records. This

is in accord with the general policy of recording statutes."

We see no failure by Dickey, jurisdictional or otherwise, to perform a legal duty or to make a good faith effort to notify the owner or the parties who may have an interest in the property of the foreclosure proceedings. He started out with one name and one address. His attempt to get more information in his telephone conversation with Mrs. Garris was frustrated by her refusal to give it. She knew Dickey's name and address, and she knew that the property had been sold for tax delinquency, and that foreclosure would follow.

We hold that the court had jurisdiction to pass the foreclosure decree of 2 June 1964, and that the decree, after it was enrolled, was final and conclusive, unless it was obtained by fraud.

Fraud is not lightly found by the courts. In *Loyola Federal S. and L. v. Trenchcraft*, 17 Md. App. 646, 303 A. 2d 432 (1973) Judge Scanlan for this Court fully examined the Court of Appeals cases dealing with the standard of proof in fraud cases, and concluded that it is the law of Maryland that "proof of fraud in a civil action, either in law or in equity, must be 'clear and convincing'."

There was no direct evidence of any fraud in the conduct of the foreclosure. At most, there is an arguable inference that the redemption by somebody in the previous tax foreclosure case should have led Dickey to the parties in interest. The scant weight of such an inference, the opposite of which is equally arguable, falls far short of the clear and convincing standard required.

The record provides no basis for a finding of fraud in the conduct of the foreclosure.

*Decree affirmed.*
*Appellants to pay costs.*