MONUMENTAL ENTERPRISES, INC. ET AL. *v.*
MAYOR & CITY COUNCIL OF
BALTIMORE CITY ET AL.

[No. 503, September Term, 1974.]

*Decided May 2, 1975.*

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*David R. Kuney*, with whom was *William J. Evans* on the brief, for Monumental Enterprises, Inc., part of appellant.

*Jervis Spencer Finney*, with whom were *Robert R. Winter* and *Ober, Grimes & Shriver* on the brief, for other appellant.

*Frank R. Shaulis, Assistant City Solicitor*, with whom were *Benjamin L. Brown, City Solicitor* and *Harry S. Swartzwelder, Jr., Chief Assistant City Solicitor*, on the brief, for appellee Mayor and City Council of Baltimore City.

*Edgar H. Gans*, with whom was *J. Leonard Feinglass* on the brief, for other appellee.

MENCHINE, J., delivered the opinion of the Court.

On August 5, 1971 the Mayor and City Council of Baltimore (Baltimore City) filed in the Circuit Court No. 2 of Baltimore City its petition against Property Investors, Inc. (Property) to foreclose rights of redemption in a certain tract of land previously purchased by it at tax sale 7534. The tract, comprising 1.51 acres of land, was shown on the assessment rolls to be assessed to Property and was described as follows:

"ES Parkdale Ave., 226'3" S.
Druid Park Dr.
Containing 1.51 Acres
Unimproved."

In its petition Baltimore City elected to avail itself of the provisions of Article 81, §§ 117 through 121 which read as follows:

"§ 117. **Alternate method of foreclosure — To apply only when Mayor and City Council of Baltimore is purchaser.**

Whenever the Mayor and City Council of Baltimore has become the purchaser of any

property in the City of Baltimore at a tax sale, the said city is hereby empowered to institute a proceeding to foreclose the right of redemption of such property under the provisions of §§ 117 to 121, inclusive. None of the provisions of §§ 117 to 121, inclusive, shall affect the right of the said city to proceed under the other provisions of this subtitle, the procedure hereinafter set forth being intended to be an alternative procedure to be adopted at the option of the Mayor and City Council of Baltimore, acting through the city comptroller for the time being, when the said city has become the purchaser of property at tax sales.

### "§ 118. Same — All provisions of subtitle applicable.

All of the provisions of this subtitle shall apply to any proceeding to foreclose the right of redemption brought by the city under the provisions of §§ 117 to 121, inclusive, except as is otherwise provided in the said sections.

### "§ 119. Same — Parties defendant.

The defendant in any such action shall be the person whose name last appears on the collector's tax roll as owner of the property. Such person shall be considered and treated as the owner of the property for the purposes of §§ 117 to 121, inclusive. If, upon the collector's tax roll it appears that the owner is unknown, then the property shall be proceeded against as belonging to an unknown owner as hereinbefore provided. All other persons having or claiming to have an interest in the property, shall be included as parties defendant by the designation 'all persons having or claiming to have an interest in property . . . . . ., (giving a description of the property in substantially the same form as the description which appears on the collector's tax roll).' Any or all such persons shall be so designated throughout the proceedings by the

above classification and all such persons shall be deemed to be parties defendant in the proceeding as if all the said persons were personally named in the bill of complaint.

## "§ 120. Same — Notice.

Notice and summons may be served or notice given exclusively by publication. The order of publication shall be in substantially the same form as heretofore provided and as many properties as is deemed practicable by the city may be included in the same order of publication. Publication of such notice shall be sufficient service thereof on all persons having or claiming to have an interest in the property and shall be of same force and effect as if all such persons were personally served and all of said persons are hereby required to take notice of such proceedings and of any and all steps thereunder.[1]

---

1. The form of order of publication prescribed by the law as it existed at the time of the filing of the subject petition for foreclosure is set forth in Article 81, § 107 of the Annotated Code of Maryland (1969 replacement volume) and reads as follows:

"Order of Publication

'The object of this proceeding is to secure the foreclosure of all rights of redemption in the following property . . . . . . . . . . . in the . . . . . . . . . . . ., sold by the Collector of Taxes for the . . . . . . . . . . . of . . . . . . . . . . . . and the State of Maryland to the plaintiff in this proceeding:

(Here insert description of property in substantially the same form as the description appearing on the Collector's tax roll.)

The bill states, among other things, that the amounts necessary for redemption have not been paid, although more than a year and a day from the date of sale has expired.

It is thereupon this . . . . . . . . . day of . . . . . . . . . ., 19 . . . ., by the Circuit Court for . . . . . . . . . ., Ordered, That notice be given by the insertion of a copy of this order in some newspaper having a general circulation in . . . . . . . . . once a week for four successive weeks, warning all persons interested in the said property to be and appear in this Court by the . . . . . . . . day of . . . . . . ., 19 . . . ., and redeem the property . . . . . . . . . . and answer the bill or thereafter a final decree will be rendered foreclosing all rights of redemption in the property, and vesting in the plaintiff a title, free and clear of all encumbrances.'

(b) Whenever original notice of the pendency of the suit is mailed to a resident or nonresident defendant, whether or not required by this subheading, a copy of the order of publication shall be enclosed with the notice."

"§ **121. Same — Final decree.**

When, in any action to foreclose the right of redemption brought by the Mayor and City Council of Baltimore, under §§ 117 to 121, inclusive, the court shall make a final decree foreclosing all rights of redemption in the property, the court, in its decree, shall direct the collector to prepare and execute a deed conveying title to the property to the Mayor and City Council of Baltimore. Upon the execution of such a deed the Mayor and City Council of Baltimore shall be vested with an absolute estate in fee simple or a leasehold estate as the case may be, in such property and all persons, including the State of Maryland, infants, incompetents, absentees, and nonresidents, who have or may have had any right, title, interest, claim, lien or equity of redemption in or upon such property shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

Baltimore City further elected to bring the action exclusively by publication as authorized by § 120, *supra.* The record shows that Baltimore City complied with all statutory requisites as to publication and that in addition an equity subpoena was issued for "Property Investors, Inc." with service of process had upon one Thomas R. Palmer, Resident Agent.[2]

On January 13, 1972 a final decree was passed in the foreclosure proceedings by the Circuit Court No. 2 of Baltimore City, granting "an absolute and undefeasible title, in fee simple, free and clear of all prior alienations and descents of the property and encumbrances thereon, to the

---

2. The evidence shows that the corporation whose resident agent was served with process was not, in fact, the corporation to whom the land in question had been assessed. The latter corporation had been absorbed by formal merger with Monumental Enterprises, Inc. Thus the corporate name "Property Investors, Inc." had become available as a corporate name and had been used by others. Monumental had not requested that its name be substituted for that of Property upon the tax rolls. It is the duty of the owner to see that the tax assessment records are correct. Thomas v. Kolker, 195 Md. 470, 474, 73 A. 2d 886, 887-88.

extent that the deed (hereafter mentioned) to be executed by the aforesaid Director of Finance shall convey to the Mayor and City Council of Baltimore, a municipal corporation of Maryland, a good and merchantable title, in fee simple, to the said property more particularly described or known as follows:

"ES Parkdale Ave., 226'3" S.
Druid Park Drive
Containing 1.51 acres
Unimproved
C.T.S. 7534."

The decree additionally required the said Director of Finance to execute a deed to the Mayor and City Council of Baltimore to accomplish such vesting of title and barred and foreclosed all other "right, title, interest, claim, lien, or equity of redemption in or upon such property."

On February 1, 1972, pursuant to the terms of the decree, Charles L. Benton, Director of Finance, executed a deed for said property to the Mayor and City Council of Baltimore, the same being duly recorded among the Land Records of Baltimore City in Liber R.H.B. No. 2881, folio 845.

On November 22, 1972 Baltimore City, in consideration of the sum of $5200.00, granted and conveyed the said property to Clipper Industrial Park, a general partnership, (Clipper) by deed authorized under Ordinance No. 190 of the Mayor and City Council of Baltimore, approved on October 13, 1972. That deed was recorded among the Land Records of Baltimore City in Liber R.H.B. No. 2971, folio 475.

It was not until March 29, 1973 that Monumental Enterprises, Inc., a body corporate of the State of Maryland,[3] filed a "petition to rescind decree and set aside sale of real property" in the proceedings. Alleging the fact of a tax sale; the fact of the filing of the foreclosure proceeding, and the fact that a subsequent deed had been executed to

---

**3.** The original petition had been filed in the name of "Property Investors Division of Monumental Enterprises, Inc." but, after motion raising preliminary objection had been filed, the petition was amended to show petitioner's actual corporate name.

Clipper, the petition alleged that all such proceedings "were fraudulently conducted by the Defendant Mayor and City Council in that:

"a. said Defendant failed to notify your Petitioner of the alleged delinquent taxes on the said property.

b. said Defendant failed to notify your Petitioner of the tax sale of said property.

c. said Defendant failed to notify your Petitioner of the Petition to foreclose its rights of redemption on said property as evidenced by its affidavit of service filed in these proceedings dated January 7, 1972.

d. said Defendant failed to accurately describe and identify the said property in the order of publication so as to clearly inform your Petitioner that it was its property that was the subject of the aforesaid proceedings."

The petition prayed (1) that the foreclosure decree be rescinded; (2) that the sale to Clipper be declared null and void, and (3) for other and further relief.

Baltimore City filed an answer denying the previously recited allegations. Clipper filed an answer also denying those allegations and filed as well a cross-claim against the Mayor and City Council of Baltimore to compel refund to Clipper of all monies expended on account of the purchase of the property with interest in the event that the relief prayed by Monumental should be granted.

On June 26, 1973 Wm. E. Hooper and Sons Company of Baltimore City (Hooper) sought to intervene as a party plaintiff. Authority to intervene was granted on the same date by an order of the Circuit Court No. 2 of Baltimore City. On the same date Hooper intervened in the proceedings, alleging *inter alia:* (a) that it was a subsisting lessee of Property (predecessor of Monumental) of part of the subject tract; and (b) that it was a mortgagee of Monumental. Hooper prayed (1) that its rights to the use and enjoyment of the tract be preserved; and (2) that Property (Monumental) be required to perform and satisfy all of its

obligations under the lease agreement. Hooper's petition alternatively prayed that judgment be extended against Property (Monumental) in such amounts as may fully compensate it for their defaults. The intervention petition ended with a prayer for other and further relief.

The cause came on for hearing before Judge James W. Murphy on May 24, 1974, with a stipulation of certain facts and the presentation of witnesses and exhibits by Monumental and Hooper. At the conclusion of such presentation the chancellor in an oral opinion dismissed the petitions of Monumental and Hooper as they related to Baltimore City and Clipper but reserved for future determination the *inter sese* claims of Monumental and Hooper. From the order and decree of the same date both Monumental and Hooper have appealed.

The appeal of Monumental raises the following questions:

"1. Whether the City's failure to comply with the Article 81, §§ 1-123 denied the Court jurisdiction to enter a decree foreclosing Monumental's right of redemption?

2. Whether the proceeding to foreclose Monumental's right of redemption was constitutionally defective because it deprived Monumental of property without Due Process of Law?"

The appeal of Hooper raises the following question:

"Should the chancellor have retained jurisdiction over the Mayor and City Council of Baltimore City and Clipper Industrial Park as well as over Monumental and Hooper pending final resolution of this case so that a decree ultimately rendered herein may fully and effectively protect Hooper's rights as tenant of Monumental where such rights depend, in part, upon whether certain easements crossing property purchased by the Mayor and City Council of Baltimore City at a tax sale remain valid and binding?"

### Contentions of Monumental

(a) alleged failure to comply with statute.

Monumental suggests that Baltimore City "disregarded fundamental statutory norms which are required to be observed in the process of assessing property and in selling property once a tax deficiency arises." From this premise Monumental argues that errors in the conduct of the tax sale — as distinguished from the proceedings for foreclosure of the rights of redemption — should be considered in its attack upon the jurisdiction of the court in the latter proceeding. We are persuaded from our examination of the record that no error in the tax sale procedures was committed. Even if we assumed that there were such errors committed by Baltimore City in the course of preliminary procedures leading to the tax sale, the statute and decisions make it quite clear that such errors are immaterial to the validity of a decree passed by a court in proceedings conducted to foreclose rights of redemption.

Article 81, § 113 reads as follows:

> "No application shall thereafter be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; provided, however, that no reopening of any final decree on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained unless the application therefor with regard to decrees heretofore rendered is made within one year following June 1, 1968, and with regard to decrees hereafter rendered is made within one year from the date of the final decree. If the final decree of the court foreclosing all rights of redemption is set aside on the ground of lack of jurisdiction or constructive fraud, the amount required to redeem shall be the amount required by the provisions of this subtitle, and in addition thereto, the reasonable value, at the date the decree is set aside, of all

> improvements made on the property by the
> purchaser and his successors in interest."

Article 81, § 118, *supra,* made clear that the provisions of §
113 have application to proceedings brought by the City
under the Alternative Method of Foreclosure. (§ 117, *supra.*)

In *Thomas v. Kolker,* 195 Md. 470, 73 A. 2d 886, it was said
at 474 [887-88]:

> "The claim of lack of jurisdiction is based upon
> the fact that the advertisements of sale and the
> City Collector's Tax Roll for 1943 listed lots 46 and
> 47 as 'unimproved', and lot 48 as 'improved'. Lot 47
> was assessed at $220—Lot 48 at $2,400—. We need
> not consider whether this inaccuracy in the
> aavertisement and assessment rolls would have
> been a fatal objection under the law as it stood
> prior to 1941. *Cf. Gill v. Somer,* 191 Md. 204, 60 A.
> 2d 683; *Diener v. Wheatley,* 191 Md. 690, 62 A. 2d
> 783 and *Liberty Realty, Inc. v. Kenneth Co.,* 194
> Md. 148, 69 A. 2d 784. In the latter case we said that
> the Collector is not required to search the land
> records, but that it is the duty of the owner to see
> that the tax assessment records are correct. By
> Chapter 540 of the Acts of 1941, (modified in some
> respects by Chapter 761, Acts of 1943), a new
> procedure *quasi in rem* was established, analogous
> to a mortgage foreclosure. *Gathwright v.
> Baltimore,* 181 Md. 362, 30 A. 2d 252, 145 A. L. R.
> 590. Where that procedure is followed, defects in
> the prior proceedings are wholly immaterial.
> *Shapiro v. National Color Printing Co.,* 191 Md. 194,
> 60 A. 2d 679; *Oppenheimer v. Micbar Co.,* 192 Md.
> 192, 63 A. 2d 765."

It is plain, accordingly, that a final decree foreclosing
rights of redemption is conclusive except when lack of
jurisdiction is shown or there was fraud in the conduct of
the proceedings to foreclosure. This was emphasized by the
Court of Appeals in *Hardisty v. Kay,* 268 Md. 202, 299 A. 2d
771, when it declared at 208 [774]:

> "We think the legislature has been explicit in its
> language and clearly expressed its intention that a
> final decree is conclusive and *no* application shall
> thereafter be entertained unless it falls within the
> exempted categories."

Appellant relies heavily on *Jannenga v. Johnson,* 243 Md.
1, 220 A. 2d 89. We find its reliance misplaced. In *Jannenga*
it was uncontradicted that the taxpayer had in fact paid all
taxes prior to the sale. In addition, there was a failure to
comply, *in the foreclosure proceedings,* with Maryland Rule
105 respecting notice, in that no good faith effort there had
been made to provide actual notice to the owner. The Court
held such failure to make such a good faith effort
constituted constructive fraud. We note that the motion to
strike in *Jannenga,* charging constructive fraud, had been
filed within one year after passage of the foreclosure decree
and thus was within the period of limitations specified in §
113, *supra.*

In the subject case, however, the record shows by affidavit
that notice had been sent to the owner at the address shown
on the tax rolls.[4] The record also shows that an equity
subpoena had been served upon the resident agent of a
corporation bearing the name "Property Investors, Inc." [5]
More importantly, the record shows that the motion to
rescind the decree was not filed until March 29, 1973, more
than one year after the decree.[6] The course followed by
Baltimore City demonstrated a good faith attempt to accord
actual notice to the owner.

Monumental suggests that three Maryland cases "held
that the prior defects were jurisdictional errors and thus
reopened the decree." It cites *Holland v. Billingsley,* 208 Md.
635, 119 A. 2d 380; *Thomas v. Hardisty,* 217 Md. 523, 143 A.
2d 618; and *Jannenga v. Johnson, supra,* as supporting that
contention. We find that they do not. Both *Holland* and

---

4. Bills for taxes in years prior to the years for which the property was
sold, mailed to that address, had been paid.
5. See n. 2, *supra.*
6. The president and sole stockholder of Monumental admitted that he
knew of Clipper's claim to title "around the first of the year [1973]."

*Thomas* turned upon inadequate descriptions in the advertisement of sale. The late Chief Judge Brune, after noting that our tax foreclosure proceedings are *in rem* or *quasi in rem,* said in *Thomas, supra,* at 534 [623-24]:

> "We think that a proceeding *in rem* (or *quasi in rem*) should describe the *res* with sufficient accuracy so that the description given in a notice of publication would be sufficient to identify the property involved with at least reasonable certainty. * * *
>
> "In the instant case, the description is not merely brief, but clearly erroneous in describing the property as being located in one election district when it is actually located in another." [7]

*Jannenga, supra,* as previously indicated, does not stand for the proposition appellant urges. No actual fraud was shown.

We find neither lack of jurisdiction nor fraud in the foreclosure proceedings.

(b) alleged denial of due process.

There can be little doubt that the finality provisions of the

---

7. Although he concurred in the result for other reasons, Judge (later Chief Judge) Hammond felt constrained to make the following observations at 539 [626]:

> "The Tax Sales Act of 1943 sought to make tax sales immune from attacks not asserted in the proceedings to foreclose the right of redemption other than lack of jurisdiction or fraud in that proceeding. Since the passage of the Act, this Court has faithfully protected its purpose. As a result, the intent of the Act to make tax sales titles valid and marketable has been effectuated. The majority opinion cannot fail seriously to weaken, if not to destroy, the legislative purpose and the prior holdings of this Court in carrying out that purpose in *Thomas v. Kolker,* 195 Md. 470; *Oppenheimer v. Micbar Co.,* 192 Md. 192; *Shapiro v. National Color Printing Co.,* 191 Md. 194; *Gathwright v. Mayor & City Council of Baltimore,* 181 Md. 362; *James v. Zantzinger,* 202 Md. 109; and *Sanchez v. James,* 209 Md. 266. Never before have prior irregularities been allowed to effect a foreclosure decree or to serve as the basis of a finding of lack of jurisdiction. Now I fear, tax titles have again been made doubtful and litigation as to them invited by unnecessarily — and I think erroneously — basing the decision on a very unsettling ground when the same result properly could have been reached on another ground."

But see, Article 81, § 114 relating to faulty property descriptions.

tax sale statute could not operate to give validity to a void sale nor to deny, in a proper case, the force and effect of the due process provisions of Article 23 of the Declaration of Rights of Maryland or of the Fourteenth Amendment of the Constitution of the United States. See: *Thomas v. Hardisty,* at 536 [625]; *Jannenga v. Johnson,* at 8 [93] (concurring opinion); *Ginnavan v. Silverstone,* 246 Md. 500, 506, 229 A. 2d 124, 127-28.

The absence of due process in the subject case is suggested as having been produced by what Monumental terms "the statutory defects in the City's conduct of these proceedings." These suggested defects are three in number, namely:

1. Failure of the City to correct the address of owner despite "a four year effort by Monumental to correct the tax rolls."
2. Alleged agreement by telephone by an unknown employee of Baltimore City to consolidate the tax bill for the subject property with that for another property.
3. Failure of assessing authorities to note the change in corporate ownership from Property to Monumental after merger.

The suggested errors attributed by Monumental to Baltimore City are in every instance rather the product of Monumental's lack of care. The alleged "four year effort by Monumental to correct the tax rolls" consisted solely of typing an address under the name of Property at the time the bills were paid. William M. Kinnersley, Jr., City Collector, called as a witness by Monumental, testified that a form specifically designed for a change of address was included with all tax bills. Monumental never completed such a form.

Monumental suggests also that Baltimore City should have observed a "new address" noted on a form authorizing a reduction of assessment for the year 1964. Mr. Kinnersley testified that when such a form comes through "the only thing we are interested in is changing the assessment." With

a change of address form included with every tax bill this is readily understandable.

We think that what was said in *Thomas v. Hardisty, supra,* at 531 [622] is highly pertinent here:

> "This Court has also upheld tax foreclosure proceedings against attacks based upon the use of an old or erroneous address of the taxpayers, whose rights of redemption were being foreclosed, in cases where a correct address might have been ascertained and used, either easily or without great effort. *James v. Zantzinger, supra; Sanchez v. James,* 209 Md. 266, 120 A. 2d 836."

The president of Monumental, a licensed real estate broker for fifteen or sixteen years, gave testimony to the effect that in the course of a telephone conversation with an unknown employee of Baltimore City, a promise had been made to consolidate the tax bill in the subject case with one applicable to another property. He said that subsequently the latter tax bill had in fact been paid. He conceded, however, that there was nothing on the subsequent tax bills for later years that made any reference to the subject property, nor was any increased assessment shown upon them.

The complaint that Baltimore City failed to note the change of corporate ownership resulting from the merger of Property into Monumental again is attributable to action followed by Monumental rather than to the neglect of Baltimore City. Articles of Merger, prepared by Monumental, in the part pertinent to these proceedings read as follows:

## "ARTICLE IV

### *Location of Property*

In accordance with the provisions of Article 23 of the Annotated Code of the State of Maryland, Section 65 (7),[8] the location of the properties of each

---

**8.** The correct Code reference is Section 68 (a) (7).

of the Corporations, parties to this agreement, are listed below:

| | |
|---|---|
| Monumental | Baltimore City |
| Property | Baltimore County." |

Since Monumental was the surviving corporation, the Certificate of Merger as to Property was recorded only in Baltimore County (Exhibit 10). It appears upon the face of Exhibit 1 that *Monumental only requested one certification.* Monumental never made a request to alter the assessment rolls, although tax bills for some years following merger had been received and paid that showed ownership in Property.

In sum, the unhappy stance of Monumental is the end product of its own neglect. We find no merit in Monumental's contention that it was denied due process of law.

### Contentions of Hooper

We regard Hooper's claim to a right as lessee or mortgagee of Property to be without merit. Claiming under Property, it is quite clear that any right in the subject property as a tenant or mortgagee was foreclosed by the final decree in the original proceedings below. Article 81, § 121.

As to the easement claim, if there are binding easements on the subject tract running with the land, Property (Monumental) would have been powerless to destroy them. Nor would the tax sale successor have acquired such power as the result of a foreclosure decree. On the other hand, if the easements did not run with the land, they would have been foreclosed by the final foreclosure decree. In either event, the petition of Hooper properly was dismissed as to Baltimore City and Clipper.

We shall affirm.

*Decree affirmed.*
*Costs to be paid by Monumental Enterprises, Inc. and Wm. E. Hooper and Sons Company.*