WILLIAM D. PERRYMAN *v.* SUBURBAN
DEVELOPMENT CORPORATION, Assignee

[No. 129, September Term, 1976.]

*Decided November 8, 1976.*

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*Thomas F. Mudd*, with whom were *Mudd, Mudd, Munday & Heinze* on the brief, for appellant.

*Browne L. Kooken*, with whom were *Dukes & Troese* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The issue presented for decision is whether, as contended by appellant, the chancellor erroneously vacated and set aside decrees foreclosing rights of redemption in two parcels of real property in Charles County purchased by appellant at a public tax sale. The trial court acted pursuant to the provisions of Rule 625 a. of the Maryland Rules of Procedure pertaining to revisory power over judgments. It is our conclusion that the decrees were conclusive under Art. 81, § 113, Annotated Code of Maryland (1957, 1975 Repl. Vol.), which provides that no final decree rendered pursuant to Art. 81, subtitle *Foreclosure of Rights of Redemption by Equity Suits*, may be reopened except for lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; and that the statute does not permit the application of the revisory power conferred by Rule 625 a. Accordingly, we reverse.

I

On May 22, 1973, the County Treasurer of Charles County sold to appellant, William D. Perryman, two parcels of land and improvements at a public sale instituted for nonpayment of taxes. The lots were located in a subdivision known as Clifton-on-the-Potomac and, in the certificates of sale, were described respectively as Lot 18, Block C and Lot 22, Block A. Lot 18 was sold for $1,600 and Lot 22 for $3,800. The respective tax arrearages were $248.36 and $312.16.

Almost two years later, on May 21, 1975, Mr. Perryman filed a bill of complaint in the Circuit Court for Charles

County to foreclose the rights of redemption.[1] Annexed to the bill of complaint were certificates of sale and an Affidavit of Search. The named defendants were, in each instance, (a) the owners of record, (b) the original grantors as the secured parties under purchase money deeds of trust and as the payees of the deeds of trust notes,[2] and (c) the co-trustees named in the respective deeds of trust. With respect to each lot, the appellant also named as defendants "all persons having or claiming to have an interest" in the property.

The bill of complaint prayed, *inter alia*, the passage of a decree foreclosing the rights of redemption of the defendants. A motion was also filed for an Order of Publication, supported by an affidavit pursuant to Maryland Rule 105 executed by Thomas F. Mudd, Esq., appellant's counsel. The affidavit recited the expectation that the persons named as defendants would be personally served or would receive service by certified mail, and that to the best of the affiant's knowledge and belief there were no other persons having or claiming to have an interest in the respective properties, "but it is deemed advisable to include as parties defendant any and all persons who might conceivably have or claim an interest in the land . . . and for that reason it is necessary to notify any such persons by publication." An Order of Publication was duly signed (Mitchell, J.) on May 28, 1975, which required publication once a week in each of three successive weeks warning all persons interested to appear by July 23, 1975 and redeem the property described "or thereafter a *final decree* will be rendered foreclosing all rights of redemption in the property and vesting in the plaintiff a title free and clear of all liens and encumbrances." (Emphasis added.)

---

1. Unless a proceeding to foreclose the right of redemption is filed within two years of the date of the certificate of sale, the certificate becomes void, any interest in the property is extinguished and all money received by the collector is forfeited and applied toward the taxes in arrears on the property. Art. 81, § 100.

2. The deed of trust note for Lot 18, Block C was dated September 14, 1971 and was in the principal amount of $5,164.41. The note for Lot 22, Block A was dated August 5, 1971 and was in the principal amount of $14,644.38.

Personal service was obtained upon all named defendants with respect to Lot 22, Block A. Thereafter, on August 29, 1975, the court (Mitchell, J.) signed a final order foreclosing rights of redemption with respect to that property.

As for Lot 18, Block C, however, subpoenas upon the record owners were twice returned *non est* and the court directed counsel for appellant to make further efforts to locate them. Under date of September 16, 1975, attorney Mudd executed an affidavit detailing such efforts to locate the named owners, and concluding that they no longer resided in the State of Maryland.[3] Subsequently, appellant filed, on September 17, 1975, a motion for a final order foreclosing rights of redemption with respect to Lot 18, Block C, and a final order was entered as of September 24, 1975.

The appellee, Suburban Development Corporation, did not appear upon the scene until five days later, on September 29, 1975, when a motion was filed on its behalf to set aside the decrees foreclosing the rights of redemption to both parcels of property. (This motion was filed on the thirtieth day following the final order with respect to Lot 22, Block A, which had been executed by Judge Mitchell on August 29, 1975.) The motion alleged that Suburban Development was an interested party as an assignee of the deed of trust on each of the properties. As the record here discloses, both deed of trust notes were assigned to appellee by the respective payees, without recourse, on January 11, 1972. On January 19, 1972, each note was assigned "for collateral security and for value received" to Suburban Trust Company. In February and August, 1973, the respective notes were reassigned, without recourse, to Suburban Development Corporation. *None of these assignments was recorded.*

---

3. The affiant stated in part that he had inquired of the appropriate representatives of the appellee, Suburban Development Corporation, described as the secured party under a deed of trust from the record owners, and was advised by said representatives that they had also attempted, unsuccessfully, to locate the record owners with respect to their intentions concerning the payment of the outstanding balance under the deed of trust.

Appellee's motion to set aside the decrees also asserted that its relationship to the property was known both to the plaintiff and to his attorneys, "but that no attempt was made by the plaintiff directly to notify the purchaser of the pendency of this action." The motion also made reference to a telephone conversation on August 26, 1975 between appellee's counsel and John Mudd, Esq., a partner of appellant's counsel of record, in which the former requested pay-off figures for redemption purposes; and of a subsequent telephone conversation with Thomas F. Mudd, Esq., at which time appellee's counsel first learned of the entry of the decree on August 29, 1975. With respect to the latter, the motion alleged "the parties agreed to consider ways to resolve these matters and have entered into discussion." [4]

In a detailed answer to the motion to set aside these decrees it was asserted, *inter alia*, that Mr. Perryman was without knowledge as to whether or not Suburban Development Corporation was the assignee under the deeds of trust, and it was averred that there was no legal, moral or equitable requirement that Suburban Development Corporation be named as a defendant. Annexed to the answer was a copy of a communication dated August 7, 1975 to Suburban Development Corporation, attention Ronald W. Pickett, President, by counsel for the trustees under the respective deeds of trust. The letter disclosed the equity number of the proceedings below and stated it was written "for the purpose of directing your attention to an equity proceeding filed in the Circuit Court for this County for the purpose of foreclosing the rights of redemption to certain lots purchased by Mr. Perryman for nonpayment of taxes." The writer also expressed his assumption that Suburban Development was aware of the proceedings because of the "order of publication that has appeared in the local newspaper." [5]

4. Suburban Development's memorandum of points and authorities included Maryland Rule 625 and Code, Art. 81, § 101.

5. This communication by counsel for the trustees was, it appears, the result of a letter from Thomas F. Mudd, Esq., counsel for appellant, dated May 27, 1975, to one of the trustees, informing him that he and his

A hearing on the motion to set aside the decrees was held in the Circuit Court for Charles County at LaPlata on December 19, 1975. Testimony was received from Mr. Pickett, President of Suburban Development, that in January of 1972 his company had purchased the deeds of trust notes from the original holders. (There was no public record of the assignments nor was one required.) Mr. Pickett also briefly testified that the company was willing and able to pay forthwith such sums as the court might deem necessary to pay the taxes, advertising costs and court costs. He was not cross-examined and no other testimony was received. At the conclusion of the hearing, the court (Bowling, J.) announced from the bench:

> "... the Court is reluctant to set aside a decree which basically — well, which does in fact comply with the laws for the foreclosure of the right of redemption.
>
> Based on the circumstances in the case the Court feels upon the presentation of the document showing the assignment of the deed of trust to Mr. Pickett and based on the evidence that he was unaware of it until just before he consulted with his attorney about it, that the Court will grant the motion in accordance with Rule 625.
>
> The Court feels that 625 applies to all types of decrees, including a foreclosure of the rights of redemption. . . . the Court does have the power to, in the Court's opinion, to set aside this decree, thirty days having not expired and the Court finding that the petitioner is a party in interest, being the assignee of the deed of trust, and that it would be serious, could result in serious harm or serious loss to the petitioner if the foreclosure was allowed to stand."

co-trustee would be served with suit papers in connection with the recently filed foreclosure suit on behalf of Mr. Perryman. Mr. Mudd's letter stated: "I suspect that both of these trusts were assigned to Suburban Development, and if this is the case, I would suggest that you forward the suit papers to Ron Pickett [Presitdent of Suburban Development] for action by him."

Thereafter, under date of January 12, 1976, the court signed an order stating the amount necessary for redemption of the respective properties, declaring that the properties were redeemed in favor of the petitioner, Suburban Development Corporation, as assignee under the deeds of trust, and ordering that the bill for foreclosure be dismissed.

It is from that order that this appeal has been taken by Mr. Perryman. His sole contention, with which we agree upon the circumstances presented, is that: "A decree entered pursuant to § 112 of Art. 81 of the Annotated Code of Maryland (1957) is final and conclusive and cannot be set aside except upon a finding of lack of jurisdiction or fraud in the conduct of the foreclosure."

## II

First, we observe that there was no finding by the chancellor of fraud or lack of jurisdiction. Nor, upon our examination of the record, do we perceive any basis for a finding of fraud nor any irregularity in the conduct of the foreclosure proceedings. Indeed, there was careful adherence throughout to the procedural requirements set forth in Art. 81, § 97, *et seq.*

Second, the court's decision was based solely upon Maryland Rule 625. This Rule pertains to revisory power over judgments, both generally (Rule 625 a.) and on grounds of newly discovered evidence (Rule 625 b.) The language of Rule 625 a., the first sentence of which was applied by the chancellor,[6] is as follows:

> "*For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment.* After the

---

**6.** When the Rule is applicable, the trial court possesses an extremely broad power of revision for a period of 30 days and should exercise its discretion liberally. In equity, under Maryland Rule 671 a., a final decree shall be considered enrolled after the expiration of 30 days and it may be revised only on grounds of fraud, mistake or irregularity. Hamilton v. Hamilton, 242 Md. 240, 218 A. 2d 684 (1966).

expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity." (Emphasis added.)

Third, it is fundamental that the foreclosure of the right of redemption by a holder of a tax sale certificate is a statutory equity proceeding. Art. 81, § 100. *See Dampman v. Litzau*, 261 Md. 196, 202, 274 A. 2d 347 (1971). Furthermore, in making provision for this special type of equity proceeding, the Legislature enacted a declaration of policy in Art. 81, § 97:

"The provisions of the following sections of this subtitle shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the equity courts and for the decreeing of marketable titles to property sold by the collector."

The Court of Appeals interpreted the above declaration in *Thomas v. Kolker*, 195 Md. 470, 475, 73 A. 2d 886 (1950):

"... [T]he legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure." (Emphasis added.)

The court in *Kolker* applied the predecessor provisions of Art. 81, § 112, entitled "Final Decree", and § 113, entitled "Decree Conclusive." Section 112 provides, in part:

"At the expiration of the time limited in the order of publication, and in the subpoena, the court shall pass its decree in the proceedings, in accordance with the general equity jurisdiction and practice of the said court. *The decree shall be final and conclusive* upon the defendants ... assigns or successors in right, title or interest, and all defendants shall be barred by said decree as if they

had been named in the proceedings and personally served with process. (Emphasis added.)

The succeeding section, pertaining to the conditions upon which a final decree may be reopened, provides, in part:

"No application shall thereafter be entertained to reopen any final decree rendered under the provisions of this subtitle *except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose....*" Art. 81, § 113. (Emphasis added.)

Confronted with the obvious and inevitable collision between the first sentence of Maryland Rule 625 a. and §§ 112 and 113 of Art. 81, appellee contends that the provisions of the Rule are nevertheless applicable to equity of redemption foreclosure proceedings because of the language in § 112, above quoted, that "the court shall pass its decree ... in accordance with the general equity jurisdiction and practice of the said court." We reject this contention. In the first place, Art. 81, § 101, entitled "Jurisdiction of court", declares that the general equity practice of the courts is to be followed "except as otherwise provided in this subtitle." Sections 112 and 113 of the subtitle can be read only as establishing the finality of the decree of the court after the procedural requirements of the subtitle have been followed; and there is presented a clear legislative mandate that such a final decree shall be impervious to challenge except for lack of jurisdiction or fraud. The statutory framework therefore does not permit application of the revisory power over judgments set forth in Maryland Rule 625 a. and the latter yields inexorably to Art. 81.

This conclusion is inescapable, as a matter of logic and of statutory construction. Logically, if the first sentence of Rule 625 were applicable to this special type of equity proceeding, the second sentence which permits final decrees to be set aside *after* the expiration of the thirty days for "fraud, mistake or irregularity" should also apply. Any such

construction, however, would clearly do violence to the provisions of § 113 and to the legislative Declaration of Policy with respect to marketable titles previously quoted. With respect to statutory construction — and recognizing that the Maryland Rules of Procedure are legislative in nature and have statutory force, *Taylor v. State*, 20 Md. App. 404, 412, 316 A. 2d 296 (1974) — it is a well-settled principle that specific terms covering given subject matter prevail over general language of the same or another statute which might otherwise prove controlling. *Baltimore National Bank v. State Tax Commission of Maryland*, 297 U. S. 209, 215 (1936); *United States v. Milk Distributors Association, Inc.*, 200 F. Supp. 792, 799 (D. Md. 1961). And see *Rafferty v. Comptroller of Treasury*, 228 Md. 153, 158, 178 A. 2d 896 (1962).

Similarly unavailing is appellee's contention that a decree *pro confesso* under the provisions of Maryland Rule 675 should have been entered rather than a final decree, and that under Rule 675 a., a final decree would not have been entered until after the expiration of 30 days from the entry of the order of *pro confesso*. We recognize that in proceedings for the foreclosure of rights of redemption of property purchased at tax sales, the decree *pro confesso* procedure has been utilized. See *Garris v. Dickey*, 22 Md. App. 618, 325 A. 2d 156 (1974); *Brashears v. Collison*, 207 Md. 339, 115 A. 2d 289 (1955). See also *Ginnavan v. Silverstone*, 246 Md. 500, 229 A. 2d 124 (1967). The fallacy of appellee's argument is, however, that the decree *pro confesso* procedure is not *required* to be followed in this type of case and, indeed, it would appear to be unnecessary.

That it is not required is plain from pertinent provisions of Art. 81, relating to foreclosure of rights of redemption by equity suits after tax sales at public auction. Thus, § 106 provides that the notice to parties defendant after filing of the bill of complaint shall warn them to appear on a day certain, to answer the bill or to redeem the property, and that it must contain a statement that in the event of default *"a final decree will be rendered foreclosing all rights of redemption in the property."* (Emphasis added.) Again the

provisions of § 107, pertaining to notice by publication warn that in the absence of redemption of the property and an answer to the bill, "a *final decree* will be rendered foreclosing all rights of redemption in the property, and vesting in the plaintiff a title, free and clear of all encumbrances." (Emphasis added.) It is patent therefore that the statute does not mandate the decree *pro confesso* procedure set forth in Maryland Rule 675.

It is also quite clear from the statutory framework of Art. 81 that the decree *pro confesso* procedure is unnecessary in this type of proceeding because all the proof required to establish the entitlement of the certificate holder to a final decree of foreclosure must be set forth in the bill of complaint itself. Art. 81, § 102. Thus, the plaintiff is required to disclose:

> (a) The fact of the issuance of the certificate of sale, the original or a certified copy of which must be attached to the bill of complaint,
>
> (b) A description of the property in substantially the same form as the description appearing on the collector's tax roll,
>
> (c) The fact that the property has not been redeemed by any party in interest, although more than one year from the date of the sale has expired,
>
> (d) A statement of the amount necessary for redemption.

Thus, upon a failure of all interested parties to redeem or to answer the bill of complaint, all that remains is the execution by the collector of a deed upon payment by the plaintiff of any balance of the purchase price of the property, together with any taxes, interest and penalties due. Clearly, there is no necessity for the entry of a decree *pro confesso* prior to the entry of a final decree, and the statute does not require it.

Finally, we observe that the procedure prescribed by the foreclosure subtitle adequately assures the protection of interested parties consistently with the legislative recognition of the public interest in marketable titles to

property purchased at tax sales. With respect to parties, § 103 provides that the plaintiff in any proceeding to foreclose the right of redemption shall be the holder of the certificate of sale. The defendants are also specifically enumerated as:

(a) The owner of the property as disclosed by a search of the land records, of the records of the register of wills and of any court of law or equity of the county;

(b) If the property is subject to a ground rent, the owner of the fee simple title and the owner of the leasehold title as disclosed by a search of the same records;

(c) Any mortgagee of the property *or his assignee of record*, named as such in any unreleased mortgage recorded among the land records of the county;

(d) The State of Maryland may be made a party defendant.

Any other person having or claiming any right, title or interest or equity of redemption may be included as defendant by the designation, "all persons having or claiming to have any interest" in the property; and it is specifically provided that such persons may be proceeded against by order of publication. Furthermore, an interested party may redeem the property at any time and is barred only by a final decree of foreclosure. Art. 81, § 100. *Heill v. Staniewski*, 265 Md. 722, 725, 291 A. 2d 449 (1972); *Keefauver v. Richardson*, 233 Md. 545, 551, 197 A. 2d 438 (1964).

A purchaser at a tax sale may not file for foreclosure until one year and one day has passed from date of sale. Art. 81, § 100. While the one year period is obviously designated to afford an interested party a sufficient opportunity to redeem, once the bill to foreclose is filed the statutory procedure assures notice by subpoena and publication, thus providing an additional minimum period of sixty days to a party to exercise his rights of redemption. Art. 81, § 106. In the case *sub judice*, the total elapsed time between the date

of the public sale and the final decrees appealed from was approximately 29 months in the case of Lot 18, Block C, and approximately 28 months in the case of Lot 22, Block A. In the light of the published notice of the pendency of the proceedings and of the written notice by the trustees' counsel to the president of the appellee corporation in early August, 1975, we are at a loss to understand why no petition for a determination of the amount necessary to redeem was ever filed by Suburban Development Corporation.

> *Decree reversed; cause remanded for further proceedings not inconsistent with this opinion; appellee to pay the costs.*