THEODORE J. SCHEVE ET UX. *v.* ANDREW McPHERSON ET AL.

[No. 384, September Term, 1979.]

*Decided December 11, 1979.*

The cause was argued before MASON, LISS and WILNER, JJ.

*Paul E. Rosenberg* for appellants.

*Robert E. Quinlan* for appellees.

WILNER, J., delivered the opinion of the Court.

Theodore and Geraldine Scheve, appellants, appeal from an Order of the Circuit Court for Prince George's County setting aside a partial decree foreclosing the right of appellees to redeem certain property purchased by appellants at a tax sale. Before reaching the question of whether the court erred in this action, however, we must consider the sticky question of whether we have jurisdiction to entertain the appeal.

A short synopsis of the proceedings below will serve to place the issue in focus.

On June 29, 1978, appellants filed a bill of complaint to foreclose the equity of redemption in twelve parcels of land that had been purchased by them at a tax sale on May 9, 1977. One of these parcels, designated in the bill as "A-4," had belonged to appellees. Attached as an exhibit to the bill was a copy of a notice that had been sent by the Director of Finance to appellees the day of the tax sale notifying them of their right to redeem and warning them that a proceeding to foreclose that right could be brought at any time after May 10, 1978.

Copies of the bill of complaint were properly served, either directly or constructively through an order of publication, on all parties in interest. Pursuant to the requirement in Md. Annot. Code art. 81, § 106, the subpoenas warned the former owners to answer the bill of complaint or redeem the property within 61 days after the first Monday of October, 1978 (the

61st day thus being December 2, 1978). The order of publication directed those in interest to appear in court by November 22, 1978, or suffer thereafter a final decree foreclosing all right of redemption. One of the persons served in connection with Parcel A-4 was Robert E. Quinlan, Esq., who received a summons on behalf of Chauncey A. Rice (a former, but since deceased, owner of the property) on July 19, 1978.

Although a number of people interested in other parcels included in the bill of complaint timely and successfully redeemed their properties, no action was taken with respect to Parcel A-4 until November 30, 1978 — two days before the 61-day deadline. On that day, Mr. Quinlan called the attorney for appellants, Paul E. Rosenberg, Esq., advising that his clients desired to redeem Parcel A-4, and requesting a statement of the costs involved. See Md. Annot. Code art. 81, § 111. The next day — December 1, 1978 — Mr. Rosenberg confirmed the conversation by letter to Mr. Quinlan. He advised Quinlan of his costs ($257.92), enclosed a petition to redeem the property, and said:

> "The taxes and interest must be paid to the Treasurer for Prince George's County. If you will send me the Petition along with my costs and expenses, I will join in the Petition fixing the costs and sign my receipt. Thereafter I will return it to you so that you may have the taxes paid and receipted. The Judge will then sign the Order dismissing your part of the suit and redeeming the property."

Quinlan did not respond to this letter, or take any action to implement the redemption. On December 14, 1978, Rosenberg filed with the court an affidavit of service and attempted service, and on December 20, the court signed a partial final decree foreclosing all rights of redemption in four of the parcels (including A-4) and vesting absolute and indefeasible title to them in appellants.

On January 19, 1979 — 29 days after the decree was filed with the clerk — appellees filed a petition to set it aside, alleging that (1) they had tendered to the *court* the taxes due,

(2) they had tendered to Rosenberg his costs of $257.92, (3) the tender was made within 30 days of the decree,[1] and (4) "substantial injustice would be done to the Defendants unless the Petition For Redemption filed heretofore were granted by the Court." It is important to note that the Petition does *not* allege either fraud or lack of jurisdiction in entering the decree; it is also important to note that *the court file fails to show any petition for redemption having been filed by appellees or anyone on their behalf.*[2]

Notwithstanding these omissions, the court, apparently *ex parte,* issued an order on January 19, staying the December 20 decree with respect to Parcel A-4, and ordering that the petition be set in for hearing. Such a hearing was held on March 12, 1979, by which time appellees had yet to apply to the court to fix the amount necessary for redemption as required by Md. Annot. Code art. 81, § 94. The basic facts recounted above were brought out at the hearing. Appellees' chief claim was that they relied on Rosenberg's letter as allowing them an unspecified amount of time to complete the redemption. The court accepted that argument, concluding from the bench:

> "I think Mr. Rosenberg did everything more than reasonably, and from what I have heard there is nothing here done by him that the Court could criticize in any way whatsoever. Counsel for the defendant has made that clear to me that he is not complaining. Mr. Rosenberg didn't do anything he shouldn't have done and did something he should have done.

> "What troubles me is that the offer to permit redemption is an open-ended offer. It doesn't indicate that you must redeem on or before a certain

---

1. Although the petition failed to allege when this tender was made, a subsequent memorandum of law recites that the money was tendered the same day as the petition — January 19, 1979.

2. It appears from the parties' briefs that Quinlan sent a petition to redeem to Rosenberg along with the $257.92 in costs, expecting that Rosenberg would co-sign the petition. No petition was ever filed with the court, however, even to this day. But, as will be discussed shortly, the law does not seem to require any such petition in order to effect a redemption.

day. Maybe you can read into this offer a reasonable time. However, I think that the defendant may have been lulled into a situation where they felt they could come up with these funds just about any time unless further notified by Mr. Rosenberg.

"It's too bad that there was no limit in this letter that, in other words, from Rosenberg to Quinlan, indicating, 'Yes, you may redeem up until the time I am going to submit a final decree, which will be some time in January.'

"Accordingly, the Court will conclude from the facts, as I have found them to be, that there was, in fact, a *constructive fraud.* Accordingly, pursuant to Article 81, Section 113, the Court will sign an order, when presented, setting aside this decree as to Lots 35 and 36, Block B, subdivision of Fairmont Heights, Maryland, upon the payment of all costs as itemized in Mr. Rosenberg's letter of December the 1st, 1978, and in addition thereto a further attorney's fee in the amount of $200." (Emphasis supplied.)

On March 16, 1979, the court made manifest this decision by signing an order setting aside the final partial decree of December 20, 1978 (as to Parcel A-4), and requiring appellees to pay costs of $257.92 and an additional counsel fee of $200. On March 23, 1979, this appeal was taken from the March 16 order. The record before us does not reveal that any further action was taken by the court, or by anyone else, with respect to the redemption of the property in question.

### Jurisdiction

Save for the statutory exceptions enumerated in Md. Ann. Code, Courts article, § 12-303, and two others established by the Court of Appeals,[3] this Court's jurisdiction is limited to hearing appeals "from a final judgment." Courts article, § 12-301. The initial question, then, is whether the March 16

---

**3.** Denial of a motion to dismiss a criminal case on the ground of double jeopardy, and an order that exceeds the jurisdiction of the trial court. *See* Waters v. Smith, 277 Md. 189 (1976); Flower World of Amer., Inc. v. Whittington, 39 Md. App. 187 (1978).

order setting aside the December 20 decree is a "final judgment" from which an appeal may properly be taken. The test for determining the finality — *i.e.,* the appealability — of a judgment is this: a judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding. *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 91 (1978); *United States Fire Ins. v. Schwartz,* 280 Md. 518 (1977).

The decree entered on December 20, 1978, certainly met that standard. Under art. 81, §§ 112 and 113, that decree, had it remained in effect, would have finally and conclusively foreclosed appellees' right of redemption and vested "absolute and indefeasible title" to the property in appellants. But what was the effect of the March order setting aside that decree?

Ordinarily, an order setting aside an unenrolled decree — usually issued pursuant to Maryland Rule 625 a — does not finally adjudicate anything, and is therefore not appealable. *See Owen v. Freeman,* 279 Md. 241, 249 (1977); *Madison v. State,* 205 Md. 425, 431 (1954); but *compare First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 333, concerning the appealability of an order striking an *enrolled* decree. It merely returns the case to the pre-decree status where all parties are again in more or less even balance and able to prosecute or defend their respective claims. Indeed, striking or setting aside an unenrolled decree is usually the logical antithesis of finality as defined by the Court of Appeals.

But tax sale foreclosure proceedings are unique in many ways. Art. 81, § 92, states that the pre-tax sale owner may redeem the property "at any time until the right of redemption has been finally foreclosed under the provisions of this subtitle. . . ." Section 100 repeats that right: "The right to redeem shall, nevertheless, exist and continue until finally barred by decree of the court of equity in which the foreclosure proceeding is filed. . . ." These statutes mean what they say. *Heill v. Staniewski,* 265 Md. 722 (1972); *Brashears v. Collison,* 207 Md. 339 (1955). The purpose and effect of striking the December decree, therefore, was to

reinstate appellees' right to redeem the property, a right that had been terminated by the stricken decree. The March order clearly represented a determination by the court that appellees were entitled to redeem the property, that that right should not be foreclosed, and that, if appellees followed the statutory procedure for redemption, they would be entitled to own and possess the property to the exclusion of appellants.

Except for fixing the amount necessary for redemption pursuant to art. 81, § 94 — about which the parties tell us there is no dispute — there was nothing further for the court to do, and no further opportunity for appellants to protest or to prosecute their claim. *See Cahn v. Prince George's Homes,* 38 Md. App. 280, 283 (1977), *aff'd* 283 Md. 76 (1978). Unlike the ordinary situation, a further affirmative decree (and therefore a further petition to do anything but establish the amount necessary for redemption) was unnecessary and indeed unauthorized. The mere striking of the December decree, reviving a right of redemption that could then be exercised merely by paying the amounts fixed by the court, was the one and final act that adjudicated the rights of the parties and, save for appellate review, terminated the justiciable controversy among them.[4] It therefore constituted a final and appealable order.[5]

## Constructive Fraud

The court's finding of constructive fraud was based entirely upon its perception of Mr. Rosenberg's actions of November 30 and December 1 as an "open-ended offer" which "lulled" appellees into thinking that they could "come up with

---

4. The court's Order of March 16, 1979, striking the decree, also set the *costs* at $257.92 plus an additional counsel fee of $200.

5. To conclude otherwise — to consider the order establishing the cost of redemption as the final judgment, for example — would permit a person such as appellee effectively to *preclude* an appeal by simply not applying for such a further order. His right to redeem would continue indefinitely, subject to some new or collateral proceeding (*see* Cahn v. Prince George's Homes, *supra,* 38 Md. App. 280, *aff'd* 283 Md. 76), and yet the tax sale purchaser would be unable to test the validity of the court's decision effectively barring him from the use, possession, and ownership of the property. By reason of this conclusion, it is not necessary for us to consider whether that Order might be appealable under Courts article, § 12-303(a) or (b)(6).

these funds just about any time unless further notified by Mr. Rosenberg." No other act, omission, or circumstance was mentioned by the court, or was apparent from the record, in support of its finding.

Constructive, as opposed to actual, fraud does, of course, suffice under § 113 to reopen an otherwise final decree of foreclosure. The statute itself makes this clear. *See also Jannenga v. Johnson,* 243 Md. 1 (1966); *Arnold v. Carafides,* 282 Md. 375 (1978); *Brooks v. McMillan,* 42 Md. App. 270 (1979). The question, in each case, is whether the act or omission complained about amounts, in law and in fact, to constructive fraud.

Most, if not all, of the cases in which such fraud has been found have involved the failure to give proper and legally required notice of the proceedings, or of some critical stage of the proceedings, to the former owner. Where that circumstance is found and as a result of it the former owner has been prejudiced in some way, the courts have set aside the foreclosure decree whether or not the failure to give the notice was deliberate. This was the case in *Jannenga, Arnold,* and *Brooks, supra. See also Smith v. Watner,* 256 Md. 400 (1970); *Karkenny v. Mongelli,* 35 Md. App. 187 (1977).

In none of these cases, however, nor in any other that we have found, have the Maryland courts attempted to define in more generic terms what constitutes constructive fraud. They have said only that it need not be vicious and deliberate (*Jannenga,* 243 Md. at 5), and that it rests more upon presumption and less upon furtive intent *(Whitehurst v. Barnett,* 161 Md. 444 (1932), *also Jannenga* at p. 5). To the extent that it may arise from the failure to do that which ought to be done in the course of a judicial proceeding, it seems to be somewhat akin to, though clearly not synonymous with, the traditional concept of an "irregularity"; namely, "the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done." *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475 (1968); *Calvert Fire Ins. Co. v. Reick,* 39 Md. App. 620 (1978).

Perhaps the most acceptable definition of "constructive fraud" is that stated in 37 C.J.S. *Fraud,* § 2c (pp. 211-212):

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."

*See also* 37 Am. Jur. 2d, *Fraud and Deceit,* § 4, p. 23.

A key element in this definition is the breach of a legal or equitable duty. In each instance in which the Court of Appeals or this Court has ordered or affirmed the reopening of a decree for constructive fraud the critical fact relied upon was the presence of a legal duty and the breach of it. Indeed, in *Jannenga,* the Court explained, 243 Md. at 5:

"A failure to provide [the required] notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud *since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty.*" (Emphasis supplied.)

Of equivalent significance is the fact that, in nearly each instance in which constructive fraud was *not* found, the Court noted the absence of any breach of a legal duty. *See, for example, Sanchez v. James,* 209 Md. 266 (1956), and the basis upon which that case was distinguished in *Jannenga,* 243 Md. at 6, 7; *also Garris v. Dickey,* 22 Md. App. 618 (1974), *cert. den.,* 273 Md. 720 (1974). *Compare Walter E. Heller & Co. v. Kocher,* 262 Md. 471 (1971).

It is not by accident that constructive fraud has been so limited. Constructive fraud is nonetheless fraud, a most serious charge. It is therefore "not lightly found by the courts" *(Garris v. Dickey, supra,* 22 Md. App. at 630) and

requires clear and convincing proof to establish. *Loyola Fed. S. & L. v. Trenchcraft,* 17 Md. App. 646 (1973). Even noncompliance with a legal duty need not *necessarily* amount to constructive fraud. *Walter E. Heller & Co. v. Kocher, supra.*

It is in this context that the court's finding must be considered.

There is no charge, or suggestion, that Mr. Rosenberg failed to carry out any legal duty or responsibility in connection with the foreclosure proceeding. Indeed, as noted, the Court found as a fact that he did everything he was supposed to do and did not do anything he was not supposed to do. Mr. Quinlan, an attorney, had received the notice sent to him by Mr. Rosenberg and therefore was aware not only of the proceeding but of the deadline for responding to it. At argument on his petition to set aside the decree, Quinlan characterized his November 30 conversation with Rosenberg as follows:

> "On November 30th I spoke on the telephone to Mr. Rosenberg and he said, 'You want to redeem?' and I said, 'Yes.' He said, 'Okay, I'll send you a letter which sets forth the costs and breakdown of my costs and a petition which you ought to file.' And I said, 'Fine.'"

The letter and enclosures followed the next day.

As the trial court observed, no particular deadline was specified for Quinlan to respond, either in the conversation or the letter; and, had Rosenberg rushed in to court the next day, as he otherwise had a right to do, an element of unfairness and inequity would certainly have been present. But he waited nearly three weeks before seeking a decree. As Mr. Rosenberg explained to the court:

> "It seems to me if there was some difficulty in raising the cash in the face of the subpoena that they had an obligation to come to me and say, 'Hey, look, I'm short, I need another day, another week,' and twenty days went by I heard nothing and got nothing. The obligation is upon them to come

forward with the cash and petition to redeem, or at least to send me something saying, 'I'm working on it.'

"I have an obligation to my clients. The statute provides once the time runs I can proceed. And to find a constructive fraud on that means not only do I have to serve him and send him a letter, I apparently have to knock on his door and say, 'The time is up.' And I don't think the court rules require me to go that far. Under the circumstances he has not alleged sufficient reason to find a constructive fraud to set it aside."

We agree entirely with this approach. Mr. Rosenberg was certainly under no obligation to allow any extension of time, much less to prepare the pleadings thought necessary to effectuate a redemption. He had every right to expect that if appellees truly desired to redeem at that late date, they would do so expeditiously. At best, his obligation was to wait but a reasonable time. In light of the statutory mandate (§ 112) that "[a]t the expiration of the time limited in the order of publication, and in the subpoena, the court shall pass its decree in the proceedings, in accordance with the general equity jurisdiction and practice of said court...," of which both Rosenberg and Quinlan were presumably aware, it was inappropriate to the point of being clearly erroneous for the court to consider Rosenberg's offer as an "open ended" one. Mr. Quinlan had no right to assume that Mr. Rosenberg would wait forever, to his clients' detriment, while appellees made up their mind whether they desired to redeem their property. Three weeks was long enough in the absence of any intervening communication from or on behalf of appellees.

Accordingly, we believe that the court erred as a matter of law in finding that there was constructive fraud. This, then, would preclude any relief to appellees under § 113.

### General Revisory Power

We then are faced with the somewhat hazardous question of determining whether the court could have granted the

same relief under its general revisory power, notwithstanding the very limited discretion permitted under § 113.

In *Perryman v. Suburban Dev. Corp.,* 33 Md. App. 589 (1976), this Court concluded that the broad (and discretionary) revisory power of a court over its judgments and decrees, provided for in Maryland Rule 625a, was not applicable in tax sale foreclosure proceedings. Pointing to the clear legislative mandate contained in art. 81, § 113, that "[n]o application shall . . . be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose . . . ," we concluded that "the obvious and inevitable collision" between that statute and Rule 625a must be resolved in favor of the statute. "This conclusion," we said, "is inescapable, as a matter of logic and of statutory construction." *See* 33 Md. App. at 597.

Upon certiorari in that case, the Court of Appeals concluded that because the appellant had, by its actions, waived its right of appellate review, the appeal should have been dismissed, and we never should have considered or decided the conflict between the rule and the statute. *See Suburban Dev. Corp. v. Perryman,* 281 Md. 168, 169 (1977). The Court noted, however, in footnote 1, at p. 169:

> "In directing dismissal of this appeal we are not to be understood as either approving or disapproving the Court of Special Appeals' conclusion that the revisory powers granted a circuit court by Maryland Rule 625 do not extend to cases involving foreclosure of the right of redemption. However, should the question arise again its resolution should be considered in light of our ruling in Owen v. Freeman, 279 Md. 241, 367 A.2d 1245 (1977), concerning Rule 625 as it relates to Dismissal Rule 528L of the Supreme Bench of Baltimore City, which was decided subsequent to the ruling of the Court of Special Appeals in this case."

*Owen v. Freeman* concerned the relationship between Rule

625a and Supreme Bench of Baltimore Rule 528L. The local rule, similar in purpose to Maryland Rule 530, provided for the dismissal of dormant actions. The apparent point of conflict was the provision in the local rule that, if a case was once reinstated and then not disposed of during the ensuing term, it had to be dismissed and "shall under no conditions be ordered reinstated. . . ." Under this rule, once the court, in that circumstance, entered a judgment of *non pros,* there was no way of reversing that action. That, of course, appeared to be inconsistent with the general revisory power under Rule 625a.

The Court of Appeals held that *its* rule prevailed, and, in doing so, it gave Rule 625a a very expansive application. It said, for example, that the general revisory power "is generally subject only to the restraints imposed by rules of court" and that "no judgment is specifically excluded from the operation of the rule, and our cases hold it applies to *all* final judgments." 279 Md. at 245. The Court also noted, however, that even if the local rule was intended to carve out an exception to the general rule, "such an intent could not be effectuated. This is so because those parts of any local rule which are contrary to or inconsistent with the Maryland Rules are abrogated by the latter." *Id.* at 248.

The Court of Appeals, of course, is free to give its Rules as expansive or restrictive a meaning as it feels appropriate; and, so long as any resulting conflict is with a subordinate enactment (*e.g.,* a local rule) or one that it is free to declare subordinate (*e.g.,* another of its Rules), the resolution of the conflict is not especially difficult. Should the rule conflict with a statute, however — an enactment of at least equal stature — different considerations prevail.

The limitation expressed in § 113 was first enacted in 1943 (Laws of Md., 1943, ch. 761). Until then, the law merely recognized the right of a former owner to redeem his property within one year of the sale by reimbursing the purchaser for his cost (plus interest), and directed that if he did so, the court that had ratified the sale could require the purchaser to execute a deed of reconveyance. *See* Md. Annot. Code (1939)

art. 81, § 82. The 1943 law established a whole new framework and set of procedures for dealing with tax sales and redemptions — what is now §§ 92-122 — part of which (§ 90M as enacted by ch. 761) introduced the limitation now contained in § 113. That limitation was reenacted in 1968 (Laws of Md., 1968, ch. 729) when the legislature placed a one-year statute of limitations on reopening a decree for constructive fraud.

The *general* revisory power of a court over its judgments is of much longer standing. In *Kemp v. Cook,* 18 Md. 130, 137-138 (1861), the Court observed that "[t]he power of setting aside judgments upon motion, is a common law power incident to courts of record, and exercised usually under restraints imposed by their own rules, and rarely after the term has passed in which the judgment was rendered...." *See also Seth v. Chamberlaine,* 41 Md. 186, 194 (1874): "... [T]he principle is too well established to require the citation of authorities to support it, and is of every day's application in the practice of the courts of this State, and elsewhere, that the court retains power over its own judgments and orders, in both civil and criminal cases, *during the term at which they are entered or made,* and will, *during that time,* set them aside, or change or modify them, as circumstances may require." (Emphasis supplied.)

It is apparent from *Seth,* and from other similar pronouncements by the Court, that this broad inherent common law revisory power was exercisable only during the term of court at which the judgment was entered. Once that term expired, the revisory power was quite limited. This led to a most interesting situation.

Under the State Constitution, at least since 1864, the terms of the circuit courts have been set "by law." *See* present Constitution, art. IV, § 21. Both the General Assembly and the circuit courts themselves have, at times, exercised that power; and the effect of their doing so has been a complete lack of uniformity among the courts in both the number and the duration of their terms. Some circuit courts have two

terms a year, some have three, and some have four, the only common feature being that they all last longer than 30 days.[6]

This lack of uniformity as to the number and duration of court terms automatically created a similar disparity with respect to the common law revisory power exercisable by the courts. So long as the common law rule prevailed, one court, having but two terms a year, would retain control over its judgments for up to six months, whereas another, having quarterly terms, would lose control in half that time. The "inherent" power was not equally shared.

It appears that the first limitations upon this common law revisory power came from the General Assembly. By public local law, in at least three cases, the legislature restricted the discretionary revisory power of the circuit courts to periods of 30 or 40 days.[7]

The piecemeal approach ended on November 12, 1947, when the Court of Appeals adopted Part Two, Ch. VI, Rule 1 of the

---

6. The 1851 Constitution, Art. IV, § 8 specified that the circuit judges shall hold a term of court at least twice in each year, or oftener if required by law. Through public local laws, the General Assembly, by 1860, had established regular terms for each of the 21 circuit courts then in existence (Garrett and Wicomico counties not then in being) and for the four courts then operating in Baltimore City. The number and length of terms differed from county to county, some having two, some having three, some having four terms each year. *See* 1860 Code of Public Local Laws: art. 1, § 9; art. 2, § 75; art. 3, § 42; art. 4, §§ 160, 171, 174, 175; art. 5, § 22; art. 6, § 43; art. 7, § 7; art. 8, § 52; art. 9, § 31; art. 10, § 74; art. 11, § 40; art. 12, § 23; art. 13, § 2; art. 14, § 79; art. 15, § 30; art. 16, § 40; art. 17, § 68; art. 18, § 29; art. 19, § 36; art. 20, § 25; art. 21, § 54; art. 22, § 32. Twelve courts had two terms a year, three (including as one the four courts in Baltimore City) had three terms, and six had four terms. With respect to ten counties, these or similar local laws are still in effect. *See* Public Local Laws: Allegany County, § 18; Baltimore County, § 7-1; Dorchester County, § 5-1; Frederick County, § 5-9; Garrett County, § 6-1; Prince George's County, §§ 12-1, 12-2 (providing terms for the Circuit Courts of Prince George's, Calvert, and St. Mary's Counties). In addition, pursuant to Maryland Rule 1g, the terms of the circuit courts, and the courts comprising the Supreme Bench of Baltimore, are established by local rule. Most of the circuits have provided for either two or three terms each year, but their number, length, and commencement dates still differ from county to county. *See* First Circuit Rule 2, Second Circuit Rule 3c, Third Circuit Rule 2, Fourth Circuit Rule 2, Fifth Circuit Rule 2, Sixth Circuit Rule 3, Seventh Circuit Rule 4, Eighth Circuit Rule 21.

7. *See, for example,* Laws of Md., 1886, ch. 184, limiting the general revisory power of the courts of Baltimore City to 30 days; Laws of Md., 1922, ch. 140 and 223, doing the same with respect to the Circuit Court for Harford County; Laws of Md., 1927, ch. 695, pertaining to the Circuit Court for Prince George's County.

General Rules of Practice and Procedure.[8] Noting that the new rule superseded all inconsistent statutes and rules of court, it provided:

> "Courts shall have *for a period of thirty (30) days after the doing of any act or thing in any cause* the same revisory power and control over such act or thing which they have had under the practice heretofore existing, or which they had under practice existing prior to the adoption of a special provision of any Public Local Law herewith superseded, during the term at which it was done, *and no more*; and after thirty (30) days from the doing of any such act or thing or after the expiration of the term at which it was done, whichever time is longer, courts shall have the same revisory power and control as they have had under practice heretofore existing prior to the adoption of a special provision of any Public Local Law herewith suspended, after the term at which it was done, and no more." (Emphasis supplied.)

The apparent purpose and effect of this somewhat verbose rule was to continue the common law general revisory power of the circuit courts over their judgments, but to restrict its exercise to a period of 30 days. To that extent, the Court was clearly modifying what it had previously (and has since) regarded as an inherent power of the circuit courts, its power to do so stemming from the new Constitutional provision.

The present text of Rule 625a [9] became effective January

---

8. It was not until November, 1944, that the Court of Appeals was authorized to adopt general rules of practice and procedure for the circuit courts. The occasion for this was the reconstitution of the Court as a truly independent tribunal, it previously having been composed of the chief judge of each judicial circuit. *See* Laws of Md., 1943, ch. 772, especially § 18A, ratified by the voters in November, 1944. Prior to the adoption of § 18A, the Court's rule-making power extended only to equity and appellate proceedings. Art. IV, § 18. The first General Rules of Practice and Procedure were adopted November 1, 1945, but they did not address the general revisory power over judgments.

9. "For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

1, 1957, as part of the general revision of the old equity rules and general rules of practice and procedure that we now call the Maryland Rules. As the Court said in *Pumphrey v. Grapes,* 215 Md. 573, 575 (1958), it "merely restates in substance the rule at common law, and under the General Rules of Practice and Procedure, Part Two, VI, Rule 1."

We have then the following:

(1) A statute (§ 113) that quite clearly states that "[n]o application shall . . . be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose. . . ," of which the Court said in *Hardisty v. Kay,* 268 Md. 202, 208 (1973): "We think the legislature has been explicit in its language and clearly expressed its intention that a final decree is conclusive and *no* application shall thereafter be entertained unless it falls within the exempted categories. . . ." (Emphasis by the Court of Appeals); and of which it further said in *Thomas v. Kolker,* 195 Md. 470, 475 (1950), and again in *Arnold v. Carafides,* 282 Md. 375, 377 (1978): ". . . [T]he public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship *in every case,* except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure." (Emphasis supplied.)

and

(2) A rule, Constitutionally authorized, reaffirming an inherent general revisory power that the Court has said "applies to all final judgments." *Owen v. Freeman, supra.*

In *Brooks v. McMillan,* 42 Md. App. 270, 274 (1979), we considered the footnote in *Owen* as indicating "the direction [the Court of Appeals] would have us follow" and, contrary to our earlier thoughts expressed in *Perryman,* observed that "it appears that Rule 625a is applicable."

We are saved, however, from having to decide that question. The General Assembly has resolved it for us. By Laws of Md., 1977, ch. 271, the Legislature codified Maryland Rule 625a (with one addition not relevant here) as Courts article, § 6-408. It thus has said, statutorily, that "[f]or a

period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment...." The inconsistency with § 113, if there is one, is now a *statutory inconsistency.*

In the title to ch. 271, the General Assembly declared the purpose of the Act to be that of "providing courts with revisory power over judgments within a certain period of time after the entry of the judgment and only for certain reasons thereafter." It thus neither expressed nor implied any limit upon the exercise of this revisory power during the 30-day period.

The specific rules of statutory construction are sometimes confusing, and occasionally lead to contradictory results. For example, where two statutes, both relevant, are inconsistent, one rule provides that the more recently enacted should prevail; but another rule says that if one statute is general in its application and the other is specific, the specific one prevails. *See Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 494-495 (1975), and cases cited therein in support of both propositions. Here, of course, the earlier statute is the more specific; it would therefore give way under the first rule, but prevail under the second. But the overriding consideration in all cases, to which these specific rules are merely aids, is to carry out the legislative intent. In this regard, it is necessary to consider the presumption that when the Legislature acts in a particular area, it does so with knowledge of and regard to the prior state of the law, including relevant decisions of the Court of Appeals. *See Criminal Inj. Comp. Bd. v. Gould, supra,* 273 Md. at 498; *Supervisor v. Southgate Harbor,* 279 Md. 586, 591 (1977); *Herbert v. Gray,* 38 Md. 529 (1873). This would, of course, include, in this instance, the Court decisions interpreting the breadth of Maryland Rule 625a, notably *Owen v. Freeman* (the Opinion in which was filed just two weeks after the General Assembly began its 1977 session and about a month before the bill that became ch. 271 was introduced. *See* 1977 House of Delegates Journal, p. 1241).

Given the overall history of both § 113 and the broader revisory power, we have no doubt that the 1977 enactment

was intended to prevail, and that the circuit courts, at least since July 1, 1977, if not before, do possess the power to strike or revise *any* judgment or decree entered by them upon motion filed within 30 days.[10] This includes a decree of foreclosure entered pursuant to art. 81, § 112. We therefore conclude that, while the court was erroneous in its finding of constructive fraud, it could have set aside the December decree discretionarily.

The court did not act, however, in a discretionary capacity, although it could have done so. And it is not for us to presume that, had the court not found constructive fraud, it would have set aside the decree under its general revisory power. Because such relief was requested by appellees, however, we shall remand the case back to the circuit court, without affirmance or reversal, for a further proceeding in which the court should determine whether to set aside the decree pursuant to its general revisory power provided for in Courts article, § 6-408 and Maryland Rule 625a.

> *Case remanded to Circuit Court for Prince George's County pursuant to Maryland Rule 1071 without affirmance or reversal for further proceedings in accordance with this opinion; each party to pay own costs of this appeal.*

---

10. We note, in passing, that whenever the Court of Appeals (or this Court) has applied § 113 as a bar to opening a decree entered under § 112, the application for relief had been filed after the expiration of 30 days and was thus not subject to the court's general revisory power. *See, for example,* Oppenheimer v. Micbar Co., 192 Md. 192 (1949); James v. Zantzinger, 202 Md. 109 (1953); Brashears v. Collison, *supra,* 207 Md. 339; McGarvey v. Southern Corp., 218 Md. 591 (1959); Hardisty v. Kay, *supra,* 268 Md. 202; Karkenny v. Mongelli, *supra,* 35 Md. App. 187. We are aware of no instance in which either Court has held that an application filed within the 30-day period could not be considered. Perhaps — although we need not and therefore do not decide this — the limitations so clearly expressed in § 113 were intended to have effect only upon the expiration of the 30-day general revisory power.